Sammy GILL, Appellant,

v.

The STATE of Texas, Appellee.

No. 650–93.

Court of Criminal Appeals of Texas, En Banc.

March 23, 1994.

John A. Millin, III, Houston, for appellant.

David S. Barron, Dist. Atty., Anderson, Robert Huttash, State's Atty., and Matthew W. Paul, Asst. State's Atty., Austin, for the State.

## OPINION ON THE STATE'S PETITIONS FOR DISCRETIONARY REVIEW

CAMPBELL, Judge.

A Leon County jury found appellant, Sammy Gill, guilty of aggravated robbery of a person 65 years of age or older. *See* Tex.Penal Code § 29.03(a)(3)(A). The jury assessed his punishment at imprisonment for 50 years. *See* Tex.Penal Code § 12.32. The Tenth Court of Appeals, with one justice dissenting, later reversed appellant's conviction on the ground the evidence adduced at his trial was insufficient to satisfy the requirements of Texas Code of Criminal Procedure article 38.14, the accomplice witness rule.[1] *Gill v. State*, 852 S.W.2d 7 (Tex.App.—Waco 1993). We granted the State's petitions[2] for discretionary review, pursuant to Texas Rule of Appellate Procedure 200(c)(3) and (5), to determine whether the court of appeals erred in holding that an accused's possession of stolen property must be exclusive in order for it to adequately corroborate the testimony of an accomplice witness. We now reverse.

### The Controversy

The evidence at appellant's April 1991 trial was, in relevant part, as follows: Seventy-

---

1. Article 38.14 provides that "[a] conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." *See* 1 *Underhill's Criminal Evidence* §§ 183–185 (6th ed. 1973); 23 C.J.S. *Criminal Law* §§ 1008–1024 (1989).

2. Both the Leon County District Attorney and the State Prosecuting Attorney filed petitions for discretionary review.

eight-year-old Percy Westmoreland testified that on February 5, 1990, he closed his Normangee, Texas, grocery store at 8:00 p.m. and then drove two blocks to his home. He carried three days' store receipts with him in a paper grocery sack. The store receipts consisted of checks, food stamps, "WIC" welfare cards, and approximately $12,000 in cash. Moments after Westmoreland entered his home, someone threw a blanket over him and forced him to the floor. The robber or robbers, whom Westmoreland never saw or heard speak, then grabbed the grocery sack and fled. Westmoreland also testified that he and appellant had been acquainted for several years.

■ Steve Evans, the accomplice witness,[3] testified that around 7:30 p.m. on the night in question, he and appellant entered Westmoreland's home through a window and waited for him to arrive. After Westmoreland entered his home, Evans threw a blanket over him and pushed him to the floor. Appellant then grabbed the grocery sack, and he and Evans fled.

Amanda Manning, Evans' wife, testified that around 8:45 p.m. on the night in question, she saw appellant and Evans, who was carrying a grocery sack, enter the apartment in which she and Evans resided. The two men went directly to a bedroom, where "they ... poured the money and stuff on the bed," the "stuff" being checks and WIC cards. Manning attempted to enter the bedroom, but Evans pushed her out. Evans and appellant left the apartment together about twenty minutes later.

Sharwan Manning, Amanda's sister, testified that she visited her sister's apartment on the night in question and that at about 9:00 p.m. that night, she saw appellant and Evans, who was carrying a paper sack, enter the apartment. The two men, without saying a word, went directly into a bedroom, closing the door behind them.

Finally, Leon County Sheriff Royce Wilson testified that at the time of the robbery, appellant resided one block from Westmore-

land's grocery store and about four blocks from Westmoreland's residence.

The jury charge at the guilt/innocence phase included the following instruction:

> You are instructed that Steve Evans was an accomplice, if any offense was committed as alleged in the indictment, and you cannot convict the defendant upon his testimony unless you first believe that his testimony is true and shows the guilt of the defendant as charged by the indictment, and then you cannot convict the defendant unless the accomplice witness' testimony is corroborated by other evidence tending to connect the defendant with the offense charged, and the corroboration is not sufficient if it merely shows the commission of an offense, but it must tend to connect the defendant with its commission.

The court of appeals' majority held that the non-accomplice evidence did not adequately corroborate Evans' testimony. *Gill v. State*, 852 S.W.2d, at 9. The majority explained its holding thusly:

> The problem with the State's position [that the non-accomplice evidence adequately corroborated Evans' testimony] is that there is no evidence that Gill ever possessed the brown grocery bag or the money, checks, food stamps or WIC cards it apparently contained. *See Moron v. State*, 779 S.W.2d 399, 402 (Tex.Crim.App.1985). Instead, the evidence showed that Evans had the grocery bag in his possession. Moreover, assuming that the evidence showed Gill also possessed the loot, his possession was not exclusive. For possession of recently stolen property to be sufficient corroboration, the possession by the accused must be exclusive. *Rubio v. State*, 121 Tex.Crim. 621, 50 S.W.2d 294, 295 (App.1932) [sic].
>
> Likewise, the evidence does not show any furtive or suspicious acts on Gill's part while he was with Evans. According to the two eyewitnesses [the Mannings], Gill merely walked into the apartment with Evans and accompanied him to the bedroom. Evans, not Gill, then pushed Evans'

---

3. Since Evans' testimony implicated him in the crime, he was an accomplice witness as a matter of law. *Kerns v. State*, 550 S.W.2d 91, 94 (Tex. Crim.App.1977).

wife out of the bedroom and shut the door. Gill later walked out of the apartment with Evans.

*Ibid.*

The dissenting justice argued that the testimony of the Mannings did tend to connect appellant to the commission of the offense, so as to satisfy the accomplice witness rule. The dissent pointed out simply that the non-accomplice evidence showed "the presence of the money, checks, WIC cards, and food stamps in the room where Gill and Evans were and the secretive nature of their actions" shortly after the offense was committed. *Gill v. State,* 852 S.W.2d, at 10 (Vance, J., dissenting).

### The Accomplice Witness Rule

■ The accomplice witness rule is required by neither common law nor constitution. *Thompson v. State,* 691 S.W.2d 627, 631 (Tex.Crim.App.1984). The rule simply reflects a legislative determination that accomplice testimony that implicates another should be viewed with some level of caution. *Paulus v. State,* 633 S.W.2d 827, 843 (Tex. Crim.App.1982). Under the rule it is not necessary for the non-accomplice evidence to be sufficient in itself to establish the accused's guilt beyond a reasonable doubt. *Reed v. State,* 744 S.W.2d 112, 126 (Tex.Crim. App.1988). Nor is it necessary for the non-accomplice evidence to directly link the accused to the commission of the offense. *Reynolds v. State,* 489 S.W.2d 866, 872 (Tex. Crim.App.1972). All that is required is that there be *some* non-accomplice evidence which *tends* to connect the accused to the commission of the offense alleged in the indictment. *Gosch v. State,* 829 S.W.2d 775, 777 (Tex. Crim.App.1991). Judicial experience shows that no precise rule can be formulated as to the amount of evidence that is required to corroborate the testimony of an accomplice witness. *Paulus v. State,* 633 S.W.2d, at 844. Each case must be judged on its own facts.

*Munoz v. State,* 853 S.W.2d 558, 559 (Tex. Crim.App.1993).

■ Viewed in the light most favorable to the jury's verdict, the non-accomplice evidence in the instant case established the following: (1) A person or persons robbed Westmoreland; (2) appellant had the opportunity to commit the robbery because he was a longtime acquaintance of Westmoreland and he resided near Westmoreland's grocery store and home; (3) shortly after the robbery was committed, appellant and Evans acted secretively;[4] and (4) at the same time, they jointly possessed[5] items matching the items stolen from Westmoreland. The issue before us is whether a reasonable jury could conclude that this non-accomplice evidence, taken as a whole, tended to connect appellant to the offense, even though such evidence established only his joint, rather than exclusive, possession of the property in question.

### Relevant Precedents

In *Lucas v. State,* 482 S.W.2d 236 (Tex. Crim.App.1972), the defendant was found guilty of stealing items from a department store. The non-accomplice evidence showed that (1) the theft had in fact occurred; (2) the accomplice had been in the department store on the night of the theft; (3) the defendant and the accomplice had been arrested together while sitting on the front seat of an automobile many hours after the theft; and (4) some of the stolen merchandise had been found on the back seat and in the trunk of the automobile. We held that that evidence was sufficient to satisfy the accomplice witness rule, although the defendant's possession of the stolen items was not shown to have been exclusive.

In *Cherb v. State,* 472 S.W.2d 273 (Tex. Crim.App.1971), the defendant was found guilty of burglarizing a tavern. The non-accomplice evidence showed that (1) the burglary had in fact occurred; (2) coin-operated machines in the tavern had been forced open and many coins had been taken; (3) after

---

4. Sharwan Manning testified that when appellant and Evans entered the apartment on the night in question, neither man said a word before proceeding directly to a bedroom.

5. When Amanda Manning testified regarding the behavior of appellant and Evans in her apartment on the night in question, she stated that *"they ...* poured the money and stuff on the bed."

midnight on the night of the burglary, the defendant, the accomplice, and others had left their apartment together and had later returned together; (4) sometime after they had returned, appellant had handed a bag of coins to a female who had been present; and (5) appellant had hidden the coins when someone had come to the door of the apartment. Again we held the non-accomplice evidence sufficient to satisfy the accomplice witness rule, although the defendant's possession of the stolen items was not shown to have been exclusive.

In *Alexander v. State*, 170 Tex.Crim. 282, 340 S.W.2d 493 (App.1960), the defendant was found guilty of burglary. The non-accomplice evidence showed that (1) the defendant and the accomplice had been arrested together in an automobile several hours after the burglary and (2) some of the stolen merchandise had been found in the automobile. Yet again we held the non-accomplice evidence sufficient, although the defendant's possession of the stolen items was not shown to have been exclusive. *See also Williams v. State*, 104 Tex.Crim. 58, 282 S.W. 230 (App. 1926).

We have also repeatedly held that evidence that an accused was in the company of the accomplice close to the time of the offense, coupled with other suspicious circumstances, may tend to connect the accused to the offense. *Cockrum v. State*, 758 S.W.2d 577, 581–582 (Tex.Crim.App.1988); *Harris v. State*, 738 S.W.2d 207, 218 (Tex.Crim.App. 1986); *Mitchell v. State*, 650 S.W.2d 801, 809 (Tex.Crim.App.1983). Finally, we have noted before that an accused's opportunity to commit the offense may be a suspicious circumstance. *Mitchell v. State*, 650 S.W.2d, at 808.

### Discussion

In *Lucas, Cherb,* and *Alexander,* we held that the non-accomplice evidence tended to

connect the defendants to the offenses committed despite the fact that the defendants' possession of the stolen items was joint rather than exclusive. It is true that in *Rubio v. State*, 50 S.W.2d 294 (Tex.Crim.App.1932), a theft case, we held the non-accomplice evidence insufficient because "there was a failure to show that the appellant had exclusive personal possession" of the stolen item. *Rubio v. State*, 50 S.W.2d, at 295. Although we continue to believe that our holding in *Rubio* was correct,[6] it is plain to us that the analysis utilized there was flawed and inconsistent with more recent precedent, and we now disavow it.

Adherence to sound precedent is a cornerstone of our criminal justice system. "[T]he very concept of the rule of law ... requires such continuity over time that a respect for precedent is, by definition, indispensable." *Planned Parenthood v. Casey*, — U.S. —, —, 112 S.Ct. 2791, 2808, 120 L.Ed.2d 674 (1992). Therefore, in line with the precedents, other than *Rubio*, cited previously, we hold that the non-accomplice evidence adduced at appellant's trial was sufficient to satisfy the accomplice witness rule. Reasonable jurors could conclude that that evidence, when viewed as a whole, tended to connect appellant to the offense committed.

We REVERSE the judgment of the court of appeals and AFFIRM the judgment of the trial court.

MALONEY, J., concurs in the result.

CLINTON, Judge, dissenting.

The rule of law applied by the Court in *Rubio v. State*, 121 Tex.Cr.R. 621, 50 S.W.2d 294 (1932), and relied on by the court of appeals, *Gill v. State*, 852 S.W.2d 7 (Tex. App.—Waco 1993), is well founded.[1] It has

---

**6.** In *Rubio* the defendant was convicted of stealing an automobile. The non-accomplice evidence in that case, however, showed only that (1) the defendant had stayed a short time in a two-room apartment occupied by three other persons; (2) the defendant and a second man (the leaseholder) had occupied one room, while a woman and a third man had occupied the other; and (3) that soon after the theft and while the defendant had been staying in the apartment, a wheel from the stolen automobile had been

found in the room occupied by the woman and the third man.

**1.** To connect an accused with stolen property in a place where others are present, some admittedly connected with the theft with which he is charged, there must be independent evidence showing that he had "exclusive personal possession" of the property in question. *Rubio v. State*, supra, 50 S.W.2d at 295. As the Court then explained:

been followed by the Court in, e.g., *Hamilton v. State,* 122 Tex.Cr.R. 424, 55 S.W.2d 820 (1933).[2]

The majority argues that "the analysis utilized by [the *Rubio* court] was flawed and inconsistent with more recent precedents." Opinion at 49.[3] However, none of the three cases examined in the majority opinion, at 48–49, even purport to overrule or "disavow" the rule followed in *Rubio.* They will be analyzed *seriatim.* As is true of most "recent possession" cases, the predicate for an analysis is the theory of prosecution and the conclusion is essentially factbound. See, e.g., *Williams v. State,* 104 Tex.Cr.R. 58, 282 S.W. 230 (1926); see also *McKnight v. State,* 399 S.W.2d 552 (Tex.Cr.App.1966).

*Lucas v. State,* 482 S.W.2d 236 (Tex.Cr. App.1972), involved an "inside job" of theft of certain property in a Fort Worth Spartan's Department Store, including money taken from a coin operated machine, suitcases loaded with "fifty some" cartons of cigarettes and 200 packages each containing six to eight spark plugs; it was committed during closing hours after store manager Weaver admitted

Hamon Shaw, a custodial employee, and one Aurelious Singleton, the accomplice, who was pretending to "help" Shaw cleanup; as was his custom, Weaver locked them inside and left intending to return the following morning to let them out. Instead, at an early morning hour he was called to the store, police were there and Shaw told him that Singleton had drawn a gun and tied him up. An inventory revealed the missing property.

Later that same day in San Antonio, acting on a tip a local police officer stopped the car being driven by Singleton, in which Lucas was a passenger in the front seat and a woman companion, Sarah Houston, was on the back seat beside a stolen luggage piece filled with nine sets of spark plugs; some 200 plugs were in the trunk. Neither heroin nor stolen cartons of cigarettes were found. *Id.,* at 237–238, 239–240.[4]

In deciding whether the accomplice testimony was sufficiently corroborated, the Court practically dismissed authorities cited by the parties, believing *Alexander v. State,* one of the cases relied on by the majority

"... The presumption that it was in his possession or under his control from his presence in the place where it was found would not, under the circumstances found in the record, overcome the presumption of innocence. The law touching inference to be drawn from the finding of stolen property where others besides the one accused of theft of property are dwelling, in the absence of some circumstance fixing the identity upon the accused as the possessor, is discussed at some length [in cases cited]."
*Id.,* at 295–296.

2. Considering the State's contention on motion for rehearing that accused was found in possession of property which had been acquired in the commission of the offense of burglary, the Court confirmed its original conclusions that the property was not sufficiently identified and because the evidence shows simply that "he was present in a room with other parties, among them the accomplice," accused was not shown to have been in possession "in such manner as to affect him as the possessor of recently stolen property." The Court pointed out:

"... The articles were not in the *personal possession* of the appellant. They were in a room occupied by the appellant and others. See Rubio v. State [supra]."
*Id.,* 122 Tex.Cr.R. 424, 55 S.W.2d at 822. (All emphasis here and throughout this opinion is mine unless otherwise indicated.)

3. In asserting its belief "that our holding in *Rubio* was correct" but the analysis "flawed," the majority fails to take into account that the State itself generated the issue to be resolved. It contended the requisite corroboration was met "by evidence showing that the appellant was in possession of a part of the stolen property." The court resolved that issue upon its determination that "it was essential that it be made clear that the car wheel and tire were in his possession;" after reviewing the "non-accomplice evidence" outlined in opinion, note 6, at 49, which, curiously enough, appears to have come as much if not more from Rubio himself as from State's witnesses connected with the offense being in the same place, the Court held the evidence failed to show that "appellant had exclusive possession of the automobile and tire in question." *Rubio,* 121 Tex.Cr.R. 621, 50 S.W.2d at 295.

4. As Singleton told it in court, Lucas initiated and was a party to a rather elaborate plan to accomplish the job, his role being to drive them to the store in Singleton's car, drop off Shaw and Singleton, return later upon the latter's telephone call and help load the stolen "stuff" into the car, leaving Shaw inside taped up and tied to a chair. Instead of meeting Shaw later, as planned, they bought heroin in Fort Worth and drove to San Antonio where they sold some cigarettes; they were on their way with a female companion to buy more heroin when they were stopped and arrested. *Id.,* at 237–239.

here, was more nearly in point, presumably because early the next morning after a convenience store had been burglarized and 33 cases of beer were missing, Lucas and the accomplice were found asleep in the latter's car along with 21 cases of beer, at least one of which was identified as belonging to the store. *Id.*, at 239. The closest the Court came to the question at issue was in rejecting an argument based on *McKnight v. State*, 399 S.W.2d 552 (Tex.Cr.App.1966).[5] The Court treated *McKnight vis a vis Lucas*, and then concluded:

"Appellant argues *McKnight*, supra, for the proposition that appellant did not exercise exclusive control over the stolen merchandise. In McKnight, there was joint control of a building where the stolen goods were temporarily stored. In the instant case, there was a piece of stolen luggage on the back seat of the car with a Spartan tag on it filled with stolen spark plugs. The fact that Singleton claimed ownership of the stolen merchandise and

the car in which they were riding at the time of the arrest does not bring this case within the holding of McKnight. In Alexander, the accomplice was shown to be the owner of the car.

\* \* \* \* \* \*

The arrest of appellant with accomplice the afternoon following the early morning theft, *the placing of the accomplice in the store where the crime took place the night before*, the presence of stolen merchandise on the back seat of the car was as well as in the trunk of the car in which appellant was arrested provide the combined and cumulative weight sufficient to provide facts tending to connect the appellant with commission of the crime. See Cherb v. State, Tex.Cr.App., 472 S.W.2d 273. We find the evidence sufficient to corroborate the testimony of accomplice."

*Id.*, at 240.[6]

In *Cherb v. State*, 472 S.W.2d 273 (Tex.Cr.App.1971), testimony of two men, the bar

---

**5.** McKnight was charged with theft of a motor stolen from a farm; the motor was found in a building allegedly rented by him. The theory of prosecution was that his "possession" of that recently stolen property, added to testimony of the accomplice witness, one James Firestone, to the effect that he and McKnight had stolen the motor and two others from farms in the area and ultimately placed them in the building, was sufficient to sustain the conviction. *Id.*, at 553. The Court applied the rarely fully articulated rule governing "recent possession" cases, *viz*:

" 'To warrant an inference or presumption of guilt from the circumstance alone of possession, such possession must be personal, must be recent, must be unexplained, and must involve a distinct and conscious assertion of property by the defendant.' 5 Branch's Ann. P.C., Sec. 2650, and cases collected. See also Frazier, 98 Tex.Cr.R. 411, 227 S.W. 324."

*Id.*, at 555. See also *Grant v. State*, 566 S.W.2d 954, at 956 (Tex.Cr.App.1978); *Crain v. State*, 529 S.W.2d 774, at 775–776 (Tex.Cr.App.1975), and collected cases.

Discounting the accomplice testimony, the Court concluded the evidence was insufficient to prove that McKnight was in possession of recently stolen property and, there being no other evidence tending to connect him with commission of the theft, the Court found the State failed sufficiently to corroborate the accomplice testimony.

"... The circumstantial evidence, viewed in the perspective most favorable to the state, shows only that appellant exercised joint control of the *premises* where the stolen property

was temporarily stored, and there is no evidence that appellant *asserted* any control over the *stolen property* or that he was ever aware that the motor was stolen."

*Id.*, at 555. Although not mentioning *Rubio*, the Court does cite a following, *Hamilton v. State*, supra. *Ibid.*

**6.** While Weaver's testimony placing the accomplice Singleton in the store where the crime took place may be corroborative of Singleton's own testimony that he was there and participated with Shaw in the offense, see the correct observations made by Presiding Judge Onion in his dissenting opinion to the effect that such testimony has no bearing on sufficiency of corroboration regarding accused because not incriminating evidence tending to connect Lucas with the crime in that it "simply does not meet the test. [footnote omitted]." *Id.*, at 243.

That leaves in the analysis only factors of arrest and presence of stolen merchandise in the car driven by Singleton with two passengers: Lucas in the front seat and Houston in the back with the bag full of spark plugs. There is no independent evidence, however, showing where or when Lucas and Houston first encountered Singleton and entered his car, whether either became aware that bag and contents in it and in the trunk were stolen property, and that Lucas ever made a "distinct and conscious assertion of the property," as required by, *inter alia*, *McKnight*, supra. See also *Crain v. State*, 529 S.W.2d 774, at 776 (Tex.Cr.App.1975) (quoting *Hayes v. State*, 464 S.W.2d 832, at 833 (Tex.Cr.

owner and an investigating police officer, showed only that a crime had been committed, i.e., the facts recited in items (1) and (2) by the majority, opinion, at 48. *Id.*, at 279. The Court narrowed the available corroborative testimony implicating Cherb, viz:

> "The testimony which may be considered showed that appellant left the apartment early in the morning with the other boys, that he returned with them and later handed a 'First National Bank' bag to one of the girls and told her to count it, that it contained coins, and that later appellant hid the money when a man came to the door [and later removed it from the hiding place]."

*Id.*, at 280, 281. While it is true, as the majority says, that the Court held "the non-accomplice evidence sufficient to satisfy the accomplice witness rule," opinion, at 48, it seems perfectly plain that upon returning to the apartment with the accomplice, .Cherb personally possessed and exercised actual care, custody, control and management over the bag of coins, within contemplation of the rule followed in *Rubio*. Thus there were considerably more incriminating facts tending to connect him with the burglary than mere presence with the accomplice after the offense. *Cherb*, at 281.

*Alexander v. State*, 170 Tex.Crim. 282, 340 S.W.2d 493 (App.1960), which the *Lucas* court found more nearly in point than other cases cited by the parties, *ante*, at 48, involved yet another nighttime burglary of a closed and locked store from which thirty-three cases of three different brands of canned beer were missing. The prosecution pursued the theory of unexplained possession of recently stolen property, and corroboration of accomplice testimony as well. *Id.*, 340 S.W.2d at 494. It proved circumstances of the burglary and the daytime arrest of Alexander and one Anderson, his co-indictee. They were found asleep in an automobile sitting in the middle of a street with lights and motor running; both had a strong odor of alcohol on their breath; as well as a lug wrench, twenty one cases of beer of the same brands were found, one of which was identified as coming from the store. *Id.*, at 493–494.[7]

The Court found the evidence sufficient to sustain the conviction for burglary. The identified case of beer was "found in possession of appellant and his companion," and that constitutes proof of "unexplained possession of the recent stolen property" sufficient to sustain the conviction, citing *Bernadett v. State*, 166 Tex.Cr.R. 621, 317 S.W.2d 747 (1958).[8] Furthermore, evidence of possession of recent stolen property was sufficient to corroborate testimony of the accomplice and, thus, authorized the jury to convict on that basis, citing *O'Mary v. State*, 118 Tex. Cr.R. 78, 43 S.W.2d 95 (1931).[9] 340 S.W.2d, at 494.

Since the three cases relied on by the majority, the Court has decided countless others, at least some of which have adhered to the rule of law applied in *Rubio* and its followings.

For example, in *Nelson v. State*, 542 S.W.2d 175 (Tex.Cr.App.1976)—just four years after the Court decided *Lucas v. State*, supra—a unanimous Court concluded the evi-

---

App.1971)) (mere joint control with others will not warrant an inference of guilt; test is whether accused asserts ownership over stolen property).

**7.** As a witness for the State, Anderson recounted how he and Alexander broke into the place and the latter used the lug wrench to break the lock on the ice vault, admitted taking cases of beer and then their driving around in his car until he went to sleep, only later to be awakened by the arresting officer. *Id.*, at 494.

**8.** *Bernadett v. State*, supra, is a burglary case in which accused was convicted on the theory of unexplained possession of recently stolen property, shown to be in his exclusive personal possession; there was no accomplice.

**9.** *O'Mary v. State*, supra, is a conviction for burglary of a railroad freight car; an accomplice testified. The opinion does not summarize his testimony, but says there was ample evidence to corroborate it, *viz*:

> "... The alleged stolen property was found ·in appellant's house and in his possession a very short time after same was taken. This of itself in many cases is held to afford not only corroboration but to be sufficient proof to sustain a verdict of guilty of burglary. [citations omitted]."

*Id.*, at 96.

dence was insufficient to support a conviction for burglary of a building and arson (burning the same building); the State relied on the fact that an Eisenhower Medallion taken in the burglary was discovered within hours thereafter "within three to four feet from Appellant as he stood in an open, outside area with his co-indictee approximately eight to nine feet from the Medallion." *Id.,* at 175. After reviewing all the evidence and pertinent law, the Court posed the question and answered in favor of Nelson.

> "In the instant case, appellant was shown merely to be in the proximity of the medallion. There is no evidence that appellant had any connection with, control of, or possession of the stolen property when it was found. See *McKnight v. State* [supra]; cf. *Cherb v. State,* supra. Further, the record reflects that the items taken from the community store front facility were found in the home of the accomplice witness, not in the home of the appellant.
>
> \* \* \* \* \* \*
>
> The record is devoid of any additional evidence of an *inculpatory* nature tending to connect the accused with the commission of the offense[s] ..., such as being in the company of the accomplice near the scene of the crime at the time of its commission at an unusual hour, flight, or *actual* possession of stolen property. See Edwards v. State, 427 S.W.2d 629 (Tex.Cr. App.1968)."

*Id.,* at 177.[10]

Since the three cases embraced by the majority are bracketed by predecessors to *Rubio* and its followings, they do not necessarily constitute "sound precedent" that must be followed, particularly when none even notices much less purports to overrule weightier germane precedent still extant. To pick

and choose from many decisions those few that lead to a desired result demonstrates "a [lack of] respect for precedent [that] is, by definition, indispensable." Compare majority opinion, at 49.

It seems to me that the majority is obliged to explain why it causes the Court to muddle an otherwise fairly well settled area of "recent possession" law. Because it does not I must dissent.

OVERSTREET, J., joins.

10. More recently it was followed by the court of appeals in *Edwards v. State,* 649 S.W.2d 710 (Tex.App.—Tyler 1983), no PDR. After reviewing the evidence the court applied the law, *viz:* "... Thus we conclude that not only did the State fail to provide evidence establishing the appellant's exclusive or joint possession and control of the fruits of the burglary of the Pea Patch, but failed to produce any evidence tending to connect him to the commission of the burglary of the Pea Patch. The Court of Criminal Appeals in *Rubio v. State,* [supra], held that

corroborating testimony regarding possession by an accused of recently stolen property must show exclusive possession by the accused. Such is not shown by this record. The *mere presence* of the appellant *in the company of [an accomplice] shortly after the commission of the offense is not* in and of itself *sufficient corroboration* to support the conviction in this case. Meyers v. State, 626 S.W.2d 778 (Tex.Cr.App. 1982)."
*Id.,* at 712.