# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-06-00379-CR

**Jimmy Lee Simmons, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF MILAM COUNTY, 20TH JUDICIAL DISTRICT
### NO. CR21467, HONORABLE ED MAGRE, JUDGE PRESIDING

## D I S S E N T I N G   O P I N I O N

Under the accomplice witness rule, "it is not necessary for the non-accomplice evidence to be sufficient in itself to establish the accused's guilt beyond a reasonable doubt." *Gill v. State*, 873 S.W.2d 45, 48 (Tex. Crim. App. 1994). "Nor is it necessary for the non-accomplice evidence to directly link the accused to the commission of the offense." *Id*. "All that is required is that there be *some* non-accomplice evidence which *tends* to connect the accused to the commission of the offense alleged in the indictment." *Id*. Thus, for the majority to conclude that the jury verdict in this case must be reversed, it must conclude that there is no evidence tending to connect the appellant with the offense in question other than the testimony of accomplice Lamar Johnson. *See* Tex. Code Crim. Proc. Ann. art. 38.14 (West 2007). I am of the view that there is some evidence in the record that a rational juror could view as tending to connect appellant to the offense committed. Consequently, I respectfully dissent.

I agree with the majority that the question of whether there is evidence to corroborate Lamar Johnson's testimony turns on the following:

(1)     the credibility and weight to be given Mendoza's memory of the voice he heard in his encounter earlier in the day;

(2)     the interpretation to be given the letter written by appellant to Johnson while they were both in jail pending trial; and

(3)     the significance to be given the evidence that appellant may have attempted to forge Johnson's name on an affidavit exonerating appellant from being involved in the offense.

However, I disagree with the majority's re-assessment of how the jury should have resolved these issues.

The most significant piece of corroborating evidence is the letter appellant wrote to Johnson in jail. The majority concludes that the letter "does not necessarily connect Simmons with the commission of the offense." However, this is not the standard for testing non-accomplice evidence. The standard is whether the evidence could be viewed by a rational juror as tending to connect the defendant to the offense committed. *See Hernandez v. State*, 939 S.W.2d 173, 178-79 (Tex. Crim. App. 1997). Therefore, the correct inquiry is not whether the letter could rationally be interpreted as consistent with innocence. The correct inquiry is could the letter be rationally interpreted as tending to connect the writer with the offense committed? If so, we are bound to affirm the jury's assessment of the evidence.

Reasonable minds might differ about the reading to give appellant's letter in this case. I recognize that the letter *could* be interpreted as simply an expression of frustration on the part of

2

appellant for having been accused. However, there are a number of statements in the letter that are subject to more than one reasonable interpretation:

- "my case is beat im not doing know trippin"

- "I was tring to make a way so yours would be beat, but you go in snitch on your self and others"

- "You claim to be a Gansta but you don't even realize what the "G" stand for"

- "You only care about you and that's bullshit man—that type of shit gets people killed"

- "You put my life on the line cause you trippin"

It would not be irrational to view these statements as possibly expressing frustration that Johnson had cut a deal with the State to truthfully "snitch" on appellant, that "ganstas" do not do that to each other, and such a thing might have serious consequences for the snitch. Interpreted this way, the letter tends to connect appellant to the offense.

Granted, these statements do not necessarily have to be interpreted in this manner. However, the point is that a rational juror *could* view the statements in the letter in this way and, therefore, as tending to connect appellant to the offense. When you then couple this interpretation of the letter with Mendoza's testimony regarding his memory of "Jimmy Lee's" voice[1] and the fact

_____

[1] Although he testified that the voice of "Jimmy Lee" sounded like the voice of the masked assailant, Mendoza also testified that he was not "sure" it was the same voice and, on cross-examination, that he was not "positive" it was the same voice. The majority dismisses this testimony because it does not "conclusively establish that the voice of the masked man belonged to the same man identified as 'Jimmy Lee.'" This is, of course, true. It does not conclusively establish anything. Whether this evidence conclusively establishes appellant as the masked assailant, however, is not the issue nor is it relevant. The question is whether this equivocal evidence, when considered in light

3

that appellant attempted to forge Johnson's name on an exculpatory affidavit, the non-accomplice evidence seems to me to plainly lend itself to a rational assessment that it tends to connect appellant to the offense. It certainly satisfies the "some evidence" threshold.

The jury was properly instructed on the accomplice witness rule. The decisions as to which of a number of reasonable interpretations to give the letter and the attempted forgery as well as how much weight to give Mendoza's testimony were the jury's. Their decision to interpret the letter and the other non-accomplice evidence as tending to connect appellant to the offense committed was not irrational. Therefore, there was some non-accomplice evidence in the record to corroborate Johnson's testimony. *See Gill*, 873 S.W.2d at 48. I would affirm the conviction.

_____

G. Alan Waldrop, Justice

Before Chief Justice Law, Justices Waldrop and Henson

Filed: April 10, 2008

Do Not Publish

---

of the rest of the evidence, could be viewed by a rational jury as tending to connect appellant to the offense.

4