# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00541-CR

**Roberto Alvarado, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299th JUDICIAL DISTRICT
### NO. D-1-DC-07-302368, HONORABLE CHARLES BAIRD, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Roberto Alvarado was convicted of first-degree felony injury to a child. *See* Tex. Penal Code Ann. § 22.04(a)(1), (e) (West Supp. 2009). Punishment was assessed at ten years' imprisonment. Alvarado argues that the trial court erred by admitting insufficiently corroborated accomplice testimony, *see* Tex. Crim. Proc. Code Ann. art. 38.14 (West 2005), and by overruling his objections to the State's comments during closing argument. We will affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

The jury heard evidence that on September 6, 2007, Felicia Salazar and her twenty-month-old child, Sandra, went to visit Felicia's grandmother. Felicia's father was at the grandmother's house as well, and he noticed that Sandra was covered in bruises, was missing patches of hair, and had cuts on her legs. Felicia told her father that Alvarado had inflicted Sandra's

injuries.[1]  Felicia's father noticed that Felicia had bruises and cuts on her arms as well.  Felicia's father called 911, and emergency medical personnel transported Sandra and Felicia to a hospital.

Alvarado was indicted for first-degree felony injury to a child.  *See* Tex. Penal Code § 22.04(a)(1), (e).  Felicia was indicted for injury to a child by omission, under the theory that she allowed Alvarado to injure Sandra.  *See id*. § (a)(1).  As a result, Felicia was treated as an accomplice witness at Alvarado's trial.  *See id*. § (b)(1); *Johnson v. State*, 234 S.W.3d 43, 54 (Tex. App.—El Paso 2007, no pet.) (mother is accomplice to her child's assault if she does not protect her child from it).

At trial, Felicia testified that Alvarado inflicted Sandra's injuries by hitting her, pulling out her hair, and scratching her with his fingernails.  The State called other witnesses, including the doctors who treated Sandra, the police who eventually arrested Alvarado, and the Child Protective Services (CPS) employees who investigated Sandra's abuse.  But because Felicia was the only witness who claimed to have personally seen Alvarado abuse Sandra, her testimony was the linchpin of the State's case.

On cross-examination, defense counsel questioned Felicia about her history of psychosis and paranoid ideation (among other things).  Felicia denied being aware of such mental illness or of having ever discussed it with anyone.  Defense counsel did not impeach Felicia on the matter or introduce any evidence concerning it.  During closing argument, however, defense counsel repeatedly suggested that Felicia's psychosis and paranoid ideation were established fact.  In response, the State argued that there was no "real evidence" that Felicia was psychotic or had

---

[1]  Alvarado was Sandra's father.  Felicia testified that she and Sandra lived with Alvarado from January of 2007 until the incident in question.

2

suffered from paranoid ideation. Defense counsel objected, claiming that the State's argument was "unethical" because the State knew that Felicia had been diagnosed with those ailments.[2] The court overruled defense counsel's objection.

Defense counsel objected twice more during closing arguments: once when the State argued that an "innocent person" would not have behaved the way Alvarado did following Sandra's transportation to the hospital, and once when the State, while discussing Felicia's shortcomings as a witness, claimed that "people like Roberto Alvarado don't usually pick [partners] who would make great witnesses." The court overruled both objections. The jury returned a guilty verdict, and the court assessed punishment at ten years' imprisonment. Alvarado appeals.

## STANDARD OF REVIEW

When reviewing the sufficiency of evidence offered to corroborate accomplice testimony, we "eliminate the accomplice testimony from consideration and then examine the remaining portions of the record to see if there is any evidence that tends to connect the accused with the commission of the crime." *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008) (quotation omitted). Sufficient corroborating evidence need not itself prove the defendant guilty beyond a reasonable doubt, but it must link the defendant "in some way to the commission of the crime and show that rational jurors could conclude that this evidence sufficiently tended to connect [the accused] to the offense." *Id*. (quotation omitted). "[S]ufficient accomplice-witness corroboration may be furnished by the suspicious conduct of a defendant." *Brown v. State*,

---

[2] Both sides had copies of medical records that indicated Felicia had been diagnosed with psychosis and paranoid ideation. Defense counsel agreed not to offer the records into evidence, however, because, as defense counsel admitted, Felicia's mental-health history was "collateral to a great extent."

270 S.W.3d 564, 568 (Tex. Crim. App. 2008). We examine corroborating evidence in the light most favorable to the verdict. *Cantelon v. State*, 85 S.W.3d 457, 458 (Tex. App.—Austin 2002, no pet.) (citing *Knox v. State*, 934 S.W.2d 678, 686-87 (Tex. Crim. App. 1996), and *Gill v. State*, 873 S.W.2d 45, 48 (Tex. Crim. App. 1994)).

When reviewing a prosecutor's comments during closing argument, we are mindful that "[p]ermissible jury argument generally falls into one of four areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) an answer to the argument of opposing counsel; or (4) a plea for law enforcement." *Berry v. State*, 233 S.W.3d 847, 859 (Tex. Crim. App. 2007). If a prosecutor's comments fall outside these permissible categories, we consider three factors in assessing the resulting harm: (1) the severity of the prosecutor's misconduct (i.e., the magnitude of the remarks' prejudicial effect); (2) the measures adopted to cure the misconduct (i.e., the efficacy of any cautionary instruction by the judge); and (3) the certainty of conviction absent the misconduct (i.e., the strength of the evidence supporting the conviction). *Id*. at 858-59. A prosecutor's impermissible comments are grounds for reversal only if they harm the defendant, i.e., affect his substantial rights. *Id*. at 859 (citing Tex. R. App. P. 44.2(b)).

**DISCUSSION**

Alvarado raises two basic issues in four points of error. We will address them in turn.

*Issue One: Whether Felicia's Testimony Was Sufficiently Corroborated*

The trial court properly instructed the jury that Felicia was Alvarado's accomplice. *See* Tex. Penal Code § 22.04(b)(1); *Johnson v. State*, 234 S.W.3d at 54. As a result, Felicia's testimony could support Alvarado's conviction only if it was corroborated. *See* Tex. Crim. Proc.

4

Code art. 38.14. Alvarado argues that Felicia's testimony was insufficiently corroborated and that therefore his conviction was erroneous.

In response, the State cites several pieces of evidence that it claims corroborated Felicia's testimony. First, the State notes that Alvarado "repeatedly used false names when contacted by police or CPS personnel regarding the injuries to Sandra."[3] Second, the State notes that Alvarado "attempted to avoid contact with the police"; when the police knocked on his door to execute an arrest warrant, he answered only after the police employed a ruse by calling out that they were looking for someone named "Mario."

The State is correct that this evidence corroborates Felicia's testimony. *See Felder v. State*, 848 S.W.2d 85, 98 (Tex. Crim. App. 1992) (providing officers with false identification indicates "consciousness of guilt"); *Foster v. State*, 779 S.W.2d 845, 859 (Tex. Crim. App. 1989) (jury may infer guilt from defendant's flight from police). Alvarado argues that because he was an illegal immigrant with a criminal record, he had reasons to use a pseudonym and avoid contact with police regardless of whether he abused Sandra; thus, his use of a pseudonym and failure to answer the door do not necessarily suggest that he abused Sandra. *Cf. Gill*, 873 S.W.2d at 48 (corroborating evidence must connect defendant to specific offense alleged in indictment). This argument is unavailing. While Alvarado had reasons to use a pseudonym and avoid the police that were unrelated to Sandra, those reasons did not negate the fact that the jury could construe his actions as evincing consciousness of guilt. "[W]hen there are two permissible views of the evidence

---

[3] For example, Alvarado told the police that his name was Ray Cabrera when they came to his house to arrest him. Similarly, Alvarado initially told a CPS case worker that his name was Roberto Alvarado, but he changed his story and told the case worker that his name was Ray Cabrera after she asked him about Sandra.

(one tending to connect the defendant to the offense and the other not tending to connect the defendant to the offense), appellate courts should defer to that view of the evidence chosen by the fact-finder." *Simmons v. State*, 282 S.W.3d 504, 508 (Tex. Crim. App. 2009). In other words, because the jury found Alvarado guilty, we must view his use of a pseudonym and avoidance of the police as evincing consciousness of guilt, thereby tending to corroborate Felicia's testimony. *See Cantelon*, 85 S.W.3d at 458 (corroborating evidence viewed in light most favorable to verdict).

Though Alvarado's use of a pseudonym and avoidance of the police were sufficient to corroborate Felicia's testimony, the State offered additional evidence that the jury could have found corroborative. For example, the State's medical experts testified that Sandra's injuries were consistent with Felicia's description of how Alvarado abused Sandra, and a police officer testified that Felicia's arms were cut and bruised similarly to Sandra's.[4] These facts corroborate Felicia's testimony to support a conviction. *See Simmons*, 282 S.W.3d at 511 (accomplice testimony is sufficiently corroborated when all non-accomplice testimony, viewed cumulatively, could allow rational juror to find that evidence tended to connect appellant to offense); *Castillo v. State*, 221 S.W.3d 689, 691 (Tex. Crim. App. 2007) (for accomplice testimony to be sufficiently corroborated, "there must simply be *some* non-accomplice evidence which *tends* to connect appellant to the commission of the offense alleged in the indictment"). Thus, we overrule Alvarado's first issue.

---

[4] We recognize that this testimony was not *necessarily* corroborative, but we must view it as corroborative because the jury voted to convict. *See Simmons v. State*, 282 S.W.3d 504, 508 (Tex. Crim. App. 2009) ("[W]hen there are two permissible views of the evidence (one tending to connect the defendant to the offense and the other not tending to connect the defendant to the offense), appellate courts should defer to that view of the evidence chosen by the fact-finder.").

6

***Issue Two: Whether the Trial Court Erred by Overruling Alvarado's Objections During Closing Argument***

Alvarado argues that the trial court should have sustained his objections to several statements the prosecution made during closing argument. We address those statements, and Alvarado's arguments concerning them, in turn.

### *Statement One: No "Real Evidence" of Felicia's Psychosis or Paranoid Ideation*

Alvarado contends that given its knowledge of Felicia's medical history, the State could not legitimately claim there was no "real evidence" of Felicia's psychosis or paranoid ideation. At trial, Alvarado objected to the State's comment on the basis that it was "unethical." On appeal, Alvarado also argues that the comment represented an impermissible assertion of facts not in evidence. *See Borjan v. State*, 787 S.W.2d 53, 57 (Tex. Crim. App. 1990) (prosecutor may not raise new facts during closing argument). The latter argument is waived because it was not made at trial. *See* Tex. R. App. P. 33.1(a)(1)(A); *Sterling v. State*, 800 S.W.2d 513, 520-21 (Tex. Crim. App. 1990) ("Generally, error must be presented at trial with a timely and specific objection, and any objection at trial which differs from the complaint on appeal preserves nothing for review."). The former argument is unavailing because unethicalness is not a proper basis for objection. *See generally* Texas Rules of Evidence. In any event, the State's comment was literally true—no affirmative evidence of Felicia's psychosis or paranoid ideation was offered during trial—so it was not "unethical." We overrule Alvarado's second issue as it pertains to the State's no "real evidence" comment.

### *Statement Two: An "Innocent Person" Would Not Have Behaved the Way Alvarado Did*

Alvarado argues that the State impermissibly assumed facts not in evidence when it commented that an "innocent person" would not have used an alias and tried to avoid the police.

In response, the State admits that "there was no proffered evidence of how an innocent person would act when confronted by police officers or CPS caseworkers." It argues, however, that its "innocent person" comment "was proper as a reasonable inference from the evidence and as a matter of common knowledge." *See Berry*, 233 S.W.3d at 859 (during closing argument, prosecution may draw reasonable inferences from evidence); *Martinez v. State*, 17 S.W.3d 677, 692 (Tex. Crim. App. 2000) (common knowledge is exception to prohibition against arguing facts outside the record).

While an innocent person might choose to use an alias and avoid the police, it is also reasonable to infer that such actions suggest guilt. *See Felder*, 848 S.W.2d at 98 (providing officers with false identification indicates "consciousness of guilt"); *Foster*, 779 S.W.2d at 859 (jury may reasonably infer guilt from defendant's flight from police). The State is allowed to make reasonable inferences during closing argument. *Berry*, 233 S.W.3d at 859.

Alvarado contends that the State's inference violated his right to remain silent because it was analogous to a comment on his decision not to testify at trial. *See Cruz v. State*, 225 S.W.3d 546, 548 (Tex. Crim. App. 2007) (prosecutor violates Fifth Amendment privilege against self-incrimination if she comments on defendant's failure to testify). He cites no authority that supports this contention, however, and in fact the Texas Court of Criminal Appeals has repeatedly stated that it is permissible to infer guilt from actions like Alvarado's. *See, e.g.*, *Felder*, 848 S.W.2d at 98; *Foster*, 779 S.W.2d at 859. Thus, we overrule Alvarado's second issue as it pertains to the State's "innocent person" comment.

### Statement Three: What People "Like" Alvarado "Usually" Do

Finally, Alvarado argues that the State impermissibly assumed facts not in evidence when it stated that "people like Roberto Alvarado don't usually pick [partners] who would make

8

great witnesses."[5] Alvarado argues that this comment harmed him because it suggested that unless juries were generally willing to ignore witnesses' credibility problems, child abusers would never be convicted—in other words, that the jury should convict even if the evidence did not establish Alvarado's guilt beyond a reasonable doubt. In response, the State argues that its comment was a reasonable inference from the evidence.

We agree with Alvarado that the State's comment assumed facts not in evidence; the State put on no evidence regarding what kind of people Alvarado was "like," what kind of partners such people "pick," or what kind of witnesses such partners make. Nevertheless, we conclude that the State's comment is not a basis for reversal because it did not affect Alvarado's substantial rights. *Berry*, 233 S.W.3d at 859.

We consider three factors in making this assessment: (1) the severity of the misconduct (i.e., the magnitude of the remarks' prejudicial effect); (2) the measures adopted to cure the misconduct (i.e., the efficacy of any cautionary instruction by the judge); and (3) the certainty of conviction absent the misconduct (i.e., the strength of the evidence supporting the conviction). *Id*. at 858-59. Here, the judge did not issue a cautionary instruction, and the evidence supporting Alvarado's conviction was not especially strong. Nevertheless, we conclude that the State's misconduct was not severe enough to affect Alvarado's substantial rights.

---

[5] Alvarado actually lodged his objection after the prosecutor began a follow-up comment: "People who stay with batterers—". Thus, it is not clear from the record whether Alvarado meant to object to the comment about what people "like" him "usually" do or to the comment characterizing him as a "batterer." Alvarado's appellate brief focuses on the former comment, however, so we will assume that his objection was directed at it (and was timely). In any event, the State does not contest the matter.

First, even though the prosecutor referred to "people like" Alvarado, she did not specify what kind of people Alvarado was "like." Thus, to the extent that the prosecutor's comment suggested something negative about Alvarado, it did not suggest something germane to the charges against him (unlike, say, a reference to "child abusers like Alvarado" or something similar). Second, we do not see how Alvarado could have been prejudiced by the suggestion that he was apt to select a partner who would make a poor witness. Such a suggestion does not imply that Alvarado was guilty of abusing Sandra or committing any other bad act (or even having poor character generally). Third, the prosecutor's comment included a frank admission that the State's key witness was a poor one. That admission could only have helped Alvarado.

On the whole, then, we conclude that Alvarado's substantial rights were not affected by the State's comment that "people like Roberto Alvarado don't usually pick [partners] who would make great witnesses." *Id*. at 859. We also note that, as discussed above, Alvarado's complaint about the State's comment stems from his belief that the comment invited the jury to convict despite a lack of evidence. To the extent Alvarado is correct, the jury charge rectified this problem by instructing the jury to convict only on evidence beyond a reasonable doubt. Alvarado does not contend that the jury ignored this instruction. *See Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996) (absent contrary evidence, appellate courts presume jury followed law provided by charge).

Finding that Alvarado's substantial rights were not affected by the State's "people like Alvarado" comment, we overrule Alvarado's second issue as it pertains to that comment.

**CONCLUSION**

For the reasons stated above, we affirm the trial court's judgment.

_____

David Puryear, Justice

Before Justices Patterson, Puryear and Pemberton

Affirmed

Filed:   July 1, 2010

Do Not Publish