COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| PATRICIA ANN LARA, | § | No. 08-23-00126-CR |
| Appellant, | § | Appeal from the |
| v. | § | 454th Judicial District Court |
| THE STATE OF TEXAS, | § | of Medina County, Texas |
| Appellee. | § | (TC# 22-01-14286-CR) |

## **MEMORANDUM OPINION**[1]

A jury found appellant, Patricia Ann Lara, guilty of delivery of a controlled substance and assessed punishment at nine years' confinement. In two issues on appeal, appellant asserts (1) the evidence is legally insufficient to support her conviction and (2) the trial court erred by failing to instruct the jury that a confidential informant's (CI) testimony must be corroborated. We affirm.

## THE CI'S TESTIMONY AGAINST APPELLANT

Sherry Leyva testified Hondo Police Sergeant Investigator Aaron Garza approached her and asked if he could give her money to buy drugs from appellant and she said that she would. Garza gave Leyva money and a device[2] to audio and video record the transaction. Leyva knew

---

[1] This case was transferred from our sister court in San Antonio pursuant to the Texas Supreme Court's docket equalization efforts. *See* TEX. GOV'T CODE ANN § 73.001. We follow the San Antonio court's precedent to the extent it conflicts with our own. *See* TEX. R. APP. P. 41.3.

[2] Leyva described the device as a cell phone.

appellant, who was her second cousin, as someone from whom she could acquire methamphetamine. After receiving the money for the drug purchase and the recording device, Leyva went to a motel where she was to meet appellant. At the motel, Leyva got into the passenger-side back seat of a truck with Jerry Valles and appellant who were sitting in the front seats. Leyva described the transaction as "very fast"—she gave the money to appellant, appellant gave her the drugs, and then Leyva left to meet with Garza. Leyva said she was paid by Garza, but she could not remember the amount.[3] Leyva testified she had acted as a CI on controlled buys in the past.

## APPLICABLE LAW & STANDARD OF REVIEW

Both of appellant's issues require our review of the evidence adduced at trial. In her first issue, appellant asserts the evidence is legally insufficient to support her conviction for two reasons. First, she contends the State failed to adduce sufficient evidence to corroborate the testimony of a CI (Leyva) that placed appellant in the vehicle when the drugs were purchased. Second, she contends Leyva's testimony was the only evidence that placed appellant in the vehicle and mere presence at the scene of a crime is insufficient. In her second issue, appellant asserts the trial court erred by not instructing the jury that a CI's testimony must be corroborated.

### A. CORROBORATION OF A CI'S TESTIMONY

Appellant was convicted under Health and Safety Code Section 481.112, which sets out a list of offenses for manufacture and/or delivery of controlled substances in Penalty Group 1. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112. "A defendant may not be convicted of an offense under Chapter 481, Health and Safety Code, on the testimony of a person who is not a licensed peace officer or a special investigator but who is acting covertly on behalf of a law enforcement agency or under the color of law enforcement unless the testimony is corroborated by other evidence tending to connect the defendant with the offense committed." TEX. CODE CRIM. PROC.

---

[3] Garza said he paid Leyva $40.00 to act as a CI.

art. 38.141(a). "Corroboration is not sufficient for the purposes of this article if the corroboration only shows the commission of the offense." *Id.* art. 38.141(b).

"When the State relies upon testimony that is required by statute to be corroborated, it is error for the trial court not to instruct the jury that the defendant cannot be convicted on such testimony unless there is other evidence tending to connect the defendant with the offense and that evidence showing only the commission of the offense is insufficient." *Simmons v. State*, 205 S.W.3d 65, 77 (Tex. App.—Ft. Worth 2006, no pet.). Here, the jury charge did not include an independent-corroboration instruction. However, because appellant did not request such an instruction or object to the lack of such an instruction in the charge, we may only reverse her conviction on this basis if we determine she was egregiously harmed by the error. *See Herron v. State*, 86 S.W.3d 621, 632 (Tex. Crim. App. 2002) (en banc) (holding, when defendant fails to preserve error on omission of corroborating-evidence instruction, he must show egregious harm).

Under the "egregious harm standard," the omission of a corroborating-evidence instruction may be rendered harmless if evidence other than the CI's testimony exists that fulfills the purpose of the instruction. *See Herron*, 86 S.W.3d at 632. The purpose of the instruction is to inform the jury that it cannot use a CI's testimony unless it determines that other evidence exists connecting the defendant to the offense. *Id.* If other evidence exists, the purpose of the instruction may have been fulfilled. *Id.*

## B. SUFFICIENCY OF CORROBORATION EVIDENCE REVIEW

When evaluating the sufficiency of corroboration evidence, we eliminate the CI's testimony from consideration and then examine the remainder of the record to determine if other evidence tends to connect the defendant with the commission of the offense. *Malone v. State*, 253 S.W.3d 253, 257-58 (Tex. Crim. App. 2008) (holding, "the standard for evaluating sufficiency of the evidence for corroboration under the accomplice-witness rule applies when evaluating

3

sufficiency of the evidence for corroboration under the covert-agent rule"). "To meet the requirements of the rule, the corroborating evidence need not prove the defendant's guilt beyond a reasonable doubt by itself." *Id.* at 257. "Rather, the evidence must simply link the accused in some way to the commission of the crime and show that rational jurors could conclude that this evidence sufficiently tended to connect [the accused] to the offense." *Id.* (quoting *Hernandez v. State*, 939 S.W.2d 173, 179 (Tex. Crim. App. 1997)). "All that is required is that there be *some* non-[CI] evidence which *tends* to connect the accused to the commission of the offense alleged in the indictment." *Gill v. State*, 873 S.W.2d 45, 48 (Tex. Crim. App. 1994) (en banc) (emphasis in original). There is no specific amount of non-CI corroboration evidence that is required for sufficiency purposes; instead, "[e]ach case must be judged on its own facts." *Id.* "[C]ircumstances that are apparently insignificant may constitute sufficient evidence of corroboration." *Malone*, 253 S.W.3d at 257. Although a defendant's "mere presence in the company of [a CI] before, during, and after the commission of the offense is insufficient by itself to corroborate [the CI's] testimony, evidence of such presence, coupled with other suspicious circumstances, may tend to connect the accused to the offense." *Dowthitt v. State*, 931 S.W.2d 244, 249 (Tex. Crim. App. 1996).

## OTHER EVIDENCE CONNECTING APPELLANT TO THE OFFENSE

With the above standards in mind, we review the record to determine whether there exists evidence other than Leyva's testimony that fulfills the purpose of a corroborating-evidence instruction. If such evidence exists, the omission of the instruction was rendered harmless.

Garza testified Leyva, who was already a registered CI, contacted him to say she could make a "purchase off" appellant. Garza and another officer met with Leyva and discussed the transaction. He said Leyva was supposed to capture the transaction on camera, which would allow the police to identify the dealer. Leyva was then allowed to leave on her own to meet appellant, and because she had a device to record the purchase, Garza followed her at a distance to maintain

4

visual contact with her. Garza described what he could see on the live feed from the video, which was played for the jury, as follows:

> So we see [Leyva] pull . . . up into the parking spot. She gets out of the vehicle. In the . . . live feed we see her talking to somebody. We're not sure who that person is, but we see her talking – talking to somebody. Shortly after we see her getting into the back of a vehicle. When she gets in the back of the vehicle, we were able to identify the driver as Jerry Valles from previous contacts and other investigations. The front seat passenger, we weren't sure who it was until later on in the investigation where we were able to identify her as [appellant]. But ultimately she's in the vehicle. [Appellant] extends her arm back and conducts the transaction with [Leyva]. [Leyva] then asked how much is it going to be. They . . . tell her $40. She provides the $40. Then she gets out of the vehicle shortly after, leaves the location, doesn't speak to anybody else, and returns back to the meet location where we then take – or I take possession of the narcotics and end the recording.

Garza stated Valles negotiated the sales price of the drugs with appellant. Although Garza was able to identify Valles in the truck, he was unable to identify the other person sitting in the front passenger seat. Garza admitted the video "wasn't the best," but it recorded "the tattoo whenever [appellant] reach[ed] back [to hand the drugs to Leyva]." Garza said they were able to look back at appellant's "previous jail bookings and match that tattoo and identify [appellant] that way."

During Garza's testimony, photographs of appellant's arm were admitted into evidence. One photograph was a screenshot from the live video that shows a tattoo on appellant's bicep as she handed the drugs back to Leyva. Another photograph, taken during a previous booking of appellant, shows a tattoo on her upper arm. Garza testified that holding the photographs side by side lead him to believe the tattoos were on the same person—appellant.

Sergeant Investigator Ben Mireles testified he was with Garza when they met with Leyva, and he searched Leyva's automobile both before and after the controlled-buy to ensure Leyva did not have any drugs or money with her. Although he did not search her body, Mireles did not believe Leyva had drugs on her person based on the way she was walking around and because she was talking with nothing in her mouth.

After the State rested, defense counsel moved for a directed verdict on the grounds that the State did not prove the elements of either actual or constructive delivery. After the trial court denied the motion, the defense rested, and the parties met for the charge conference.

We conclude the evidence goes beyond merely showing appellant's presence during the commission of an offense. The evidence shows drugs being passed from a woman sitting in the front seat to Leyva who was sitting in the back seat.

Although the CI identified the woman as appellant, neither Garza nor Mireles could identify the woman sitting in the front seat as appellant. However, Garza was able to identify the woman's tattoo seen on the video as belonging to appellant. Therefore, the evidence is legally sufficient to "link [appellant] in some way to the commission of the crime and show that rational jurors could conclude that this evidence sufficiently tended to connect [appellant] to the offense." *Malone*, 253 S.W.3d at 257. Accordingly, the purpose of the corroborating-evidence instruction was fulfilled, and the trial court's error was rendered harmless. *See Herron*, 86 S.W.3d at 632. Therefore, we conclude the evidence is legally sufficient to support the conviction.

## CONCLUSION

For the reasons stated above, we overrule appellant's issues on appeal and affirm the trial court's judgment.

SANDEE B. MARION, Chief Justice (Ret.)

November 17, 2023

Before Palafox, J., Soto, J., and Marion, C.J. (Ret.)
Marion, C.J. (Ret.) (Sitting by Assignment)

Do Not Publish