TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-08-00541-CR






Roberto Alvarado, Appellant


v.


The State of Texas, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299th JUDICIAL DISTRICT

NO. D-1-DC-07-302368, HONORABLE CHARLES BAIRD, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N


 Roberto Alvarado was convicted of first-degree felony injury to a child. See Tex.
Penal Code Ann. § 22.04(a)(1), (e) (West Supp. 2009). Punishment was assessed at ten years'
imprisonment. Alvarado argues that the trial court erred by admitting insufficiently corroborated
accomplice testimony, see Tex. Crim. Proc. Code Ann. art. 38.14 (West 2005), and by overruling
his objections to the State's comments during closing argument. We will affirm the judgment.


FACTUAL AND PROCEDURAL BACKGROUND

 The jury heard evidence that on September 6, 2007, Felicia Salazar and her twenty-month-old child, Sandra, went to visit Felicia's grandmother. Felicia's father was at the
grandmother's house as well, and he noticed that Sandra was covered in bruises, was missing patches
of hair, and had cuts on her legs. Felicia told her father that Alvarado had inflicted Sandra's
injuries. (1) Felicia's father noticed that Felicia had bruises and cuts on her arms as well. Felicia's
father called 911, and emergency medical personnel transported Sandra and Felicia to a hospital.

 Alvarado was indicted for first-degree felony injury to a child. See Tex. Penal Code
§ 22.04(a)(1), (e). Felicia was indicted for injury to a child by omission, under the theory that
she allowed Alvarado to injure Sandra. See id. § (a)(1). As a result, Felicia was treated as an
accomplice witness at Alvarado's trial. See id. § (b)(1); Johnson v. State, 234 S.W.3d 43, 54 (Tex.
App.--El Paso 2007, no pet.) (mother is accomplice to her child's assault if she does not protect her
child from it).

 At trial, Felicia testified that Alvarado inflicted Sandra's injuries by hitting her,
pulling out her hair, and scratching her with his fingernails. The State called other witnesses,
including the doctors who treated Sandra, the police who eventually arrested Alvarado, and the Child
Protective Services (CPS) employees who investigated Sandra's abuse. But because Felicia was the
only witness who claimed to have personally seen Alvarado abuse Sandra, her testimony was the
linchpin of the State's case.

 On cross-examination, defense counsel questioned Felicia about her history of
psychosis and paranoid ideation (among other things). Felicia denied being aware of such mental
illness or of having ever discussed it with anyone. Defense counsel did not impeach Felicia on the
matter or introduce any evidence concerning it. During closing argument, however, defense counsel
repeatedly suggested that Felicia's psychosis and paranoid ideation were established fact. In
response, the State argued that there was no "real evidence" that Felicia was psychotic or had
suffered from paranoid ideation. Defense counsel objected, claiming that the State's argument was
"unethical" because the State knew that Felicia had been diagnosed with those ailments. (2) The court
overruled defense counsel's objection.

 Defense counsel objected twice more during closing arguments: once when the State 
argued that an "innocent person" would not have behaved the way Alvarado did following Sandra's
transportation to the hospital, and once when the State, while discussing Felicia's shortcomings as
a witness, claimed that "people like Roberto Alvarado don't usually pick [partners] who would make
great witnesses." The court overruled both objections. The jury returned a guilty verdict, and the
court assessed punishment at ten years' imprisonment. Alvarado appeals.


STANDARD OF REVIEW

 When reviewing the sufficiency of evidence offered to corroborate accomplice
testimony, we "eliminate the accomplice testimony from consideration and then examine the
remaining portions of the record to see if there is any evidence that tends to connect the accused with
the commission of the crime." Malone v. State, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008)
(quotation omitted). Sufficient corroborating evidence need not itself prove the defendant guilty
beyond a reasonable doubt, but it must link the defendant "in some way to the commission of the
crime and show that rational jurors could conclude that this evidence sufficiently tended to connect
[the accused] to the offense." Id. (quotation omitted). "[S]ufficient accomplice-witness
corroboration may be furnished by the suspicious conduct of a defendant." Brown v. State,
270 S.W.3d 564, 568 (Tex. Crim. App. 2008). We examine corroborating evidence in the light most
favorable to the verdict. Cantelon v. State, 85 S.W.3d 457, 458 (Tex. App.--Austin 2002, no pet.)
(citing Knox v. State, 934 S.W.2d 678, 686-87 (Tex. Crim. App. 1996), and Gill v. State, 873 S.W.2d
45, 48 (Tex. Crim. App. 1994)).

 When reviewing a prosecutor's comments during closing argument, we are mindful
that "[p]ermissible jury argument generally falls into one of four areas: (1) summation of the
evidence; (2) reasonable deduction from the evidence; (3) an answer to the argument of opposing
counsel; or (4) a plea for law enforcement." Berry v. State, 233 S.W.3d 847, 859 (Tex. Crim. App.
2007). If a prosecutor's comments fall outside these permissible categories, we consider three
factors in assessing the resulting harm: (1) the severity of the prosecutor's misconduct (i.e., the
magnitude of the remarks' prejudicial effect); (2) the measures adopted to cure the misconduct (i.e.,
the efficacy of any cautionary instruction by the judge); and (3) the certainty of conviction absent the
misconduct (i.e., the strength of the evidence supporting the conviction). Id. at 858-59. A
prosecutor's impermissible comments are grounds for reversal only if they harm the defendant, i.e.,
affect his substantial rights. Id. at 859 (citing Tex. R. App. P. 44.2(b)). 


DISCUSSION

 Alvarado raises two basic issues in four points of error. We will address them in turn.

Issue One: Whether Felicia's Testimony Was Sufficiently Corroborated

 The trial court properly instructed the jury that Felicia was Alvarado's accomplice. 
See Tex. Penal Code § 22.04(b)(1); Johnson v. State, 234 S.W.3d at 54. As a result, Felicia's
testimony could support Alvarado's conviction only if it was corroborated. See Tex. Crim. Proc.
Code art. 38.14. Alvarado argues that Felicia's testimony was insufficiently corroborated and that
therefore his conviction was erroneous.

 In response, the State cites several pieces of evidence that it claims corroborated
Felicia's testimony. First, the State notes that Alvarado "repeatedly used false names when contacted
by police or CPS personnel regarding the injuries to Sandra." (3) Second, the State notes that Alvarado
"attempted to avoid contact with the police"; when the police knocked on his door to execute an
arrest warrant, he answered only after the police employed a ruse by calling out that they were
looking for someone named "Mario."

 The State is correct that this evidence corroborates Felicia's testimony. See
Felder v. State, 848 S.W.2d 85, 98 (Tex. Crim. App. 1992) (providing officers with false
identification indicates "consciousness of guilt"); Foster v. State, 779 S.W.2d 845, 859 (Tex. Crim.
App. 1989) (jury may infer guilt from defendant's flight from police). Alvarado argues that because
he was an illegal immigrant with a criminal record, he had reasons to use a pseudonym and avoid
contact with police regardless of whether he abused Sandra; thus, his use of a pseudonym and failure
to answer the door do not necessarily suggest that he abused Sandra. Cf. Gill, 873 S.W.2d at 48
(corroborating evidence must connect defendant to specific offense alleged in indictment). This
argument is unavailing. While Alvarado had reasons to use a pseudonym and avoid the police that
were unrelated to Sandra, those reasons did not negate the fact that the jury could construe his
actions as evincing consciousness of guilt. "[W]hen there are two permissible views of the evidence
(one tending to connect the defendant to the offense and the other not tending to connect the
defendant to the offense), appellate courts should defer to that view of the evidence chosen by the
fact-finder." Simmons v. State, 282 S.W.3d 504, 508 (Tex. Crim. App. 2009). In other words,
because the jury found Alvarado guilty, we must view his use of a pseudonym and avoidance of the
police as evincing consciousness of guilt, thereby tending to corroborate Felicia's testimony. See
Cantelon, 85 S.W.3d at 458 (corroborating evidence viewed in light most favorable to verdict).

 Though Alvarado's use of a pseudonym and avoidance of the police were sufficient
to corroborate Felicia's testimony, the State offered additional evidence that the jury could have
found corroborative. For example, the State's medical experts testified that Sandra's injuries were
consistent with Felicia's description of how Alvarado abused Sandra, and a police officer testified
that Felicia's arms were cut and bruised similarly to Sandra's. (4) These facts corroborate Felicia's
testimony to support a conviction. See Simmons, 282 S.W.3d at 511 (accomplice testimony is
sufficiently corroborated when all non-accomplice testimony, viewed cumulatively, could allow
rational juror to find that evidence tended to connect appellant to offense); Castillo v. State,
221 S.W.3d 689, 691 (Tex. Crim. App. 2007) (for accomplice testimony to be sufficiently
corroborated, "there must simply be some non-accomplice evidence which tends to connect appellant
to the commission of the offense alleged in the indictment"). Thus, we overrule Alvarado's
first issue.


Issue Two: Whether the Trial Court Erred by Overruling Alvarado's Objections During Closing
Argument


 Alvarado argues that the trial court should have sustained his objections to several
statements the prosecution made during closing argument. We address those statements, and
Alvarado's arguments concerning them, in turn.

 Statement One: No "Real Evidence" of Felicia's Psychosis or Paranoid Ideation

 Alvarado contends that given its knowledge of Felicia's medical history, the State
could not legitimately claim there was no "real evidence" of Felicia's psychosis or paranoid ideation. 
At trial, Alvarado objected to the State's comment on the basis that it was "unethical." On appeal,
Alvarado also argues that the comment represented an impermissible assertion of facts not in
evidence. See Borjan v. State, 787 S.W.2d 53, 57 (Tex. Crim. App. 1990) (prosecutor may not raise
new facts during closing argument). The latter argument is waived because it was not made at trial. 
See Tex. R. App. P. 33.1(a)(1)(A); Sterling v. State, 800 S.W.2d 513, 520-21 (Tex. Crim. App. 1990)
("Generally, error must be presented at trial with a timely and specific objection, and any objection
at trial which differs from the complaint on appeal preserves nothing for review."). The
former argument is unavailing because unethicalness is not a proper basis for objection. See
generally Texas Rules of Evidence. In any event, the State's comment was literally true--no
affirmative evidence of Felicia's psychosis or paranoid ideation was offered during trial--so it was
not "unethical." We overrule Alvarado's second issue as it pertains to the State's no "real evidence"
comment.

 Statement Two: An "Innocent Person" Would Not Have Behaved the Way Alvarado Did

 Alvarado argues that the State impermissibly assumed facts not in evidence when it
commented that an "innocent person" would not have used an alias and tried to avoid the police. 
In response, the State admits that "there was no proffered evidence of how an innocent person would
act when confronted by police officers or CPS caseworkers." It argues, however, that its "innocent
person" comment "was proper as a reasonable inference from the evidence and as a matter of
common knowledge." See Berry, 233 S.W.3d at 859 (during closing argument, prosecution may
draw reasonable inferences from evidence); Martinez v. State, 17 S.W.3d 677, 692 (Tex. Crim. App.
2000) (common knowledge is exception to prohibition against arguing facts outside the record).

 While an innocent person might choose to use an alias and avoid the police, it is also
reasonable to infer that such actions suggest guilt. See Felder, 848 S.W.2d at 98 (providing officers
with false identification indicates "consciousness of guilt"); Foster, 779 S.W.2d at 859 (jury may
reasonably infer guilt from defendant's flight from police). The State is allowed to make reasonable
inferences during closing argument. Berry, 233 S.W.3d at 859. 

 Alvarado contends that the State's inference violated his right to remain silent
because it was analogous to a comment on his decision not to testify at trial. See Cruz v. State,
225 S.W.3d 546, 548 (Tex. Crim. App. 2007) (prosecutor violates Fifth Amendment privilege
against self-incrimination if she comments on defendant's failure to testify). He cites no authority
that supports this contention, however, and in fact the Texas Court of Criminal Appeals has
repeatedly stated that it is permissible to infer guilt from actions like Alvarado's. See, e.g., Felder,
848 S.W.2d at 98; Foster, 779 S.W.2d at 859. Thus, we overrule Alvarado's second issue as it
pertains to the State's "innocent person" comment.

 Statement Three: What People "Like" Alvarado "Usually" Do

 Finally, Alvarado argues that the State impermissibly assumed facts not in evidence
when it stated that "people like Roberto Alvarado don't usually pick [partners] who would make
great witnesses." (5) Alvarado argues that this comment harmed him because it suggested that unless
juries were generally willing to ignore witnesses' credibility problems, child abusers would never
be convicted--in other words, that the jury should convict even if the evidence did not establish
Alvarado's guilt beyond a reasonable doubt. In response, the State argues that its comment was a
reasonable inference from the evidence.

 We agree with Alvarado that the State's comment assumed facts not in evidence; the
State put on no evidence regarding what kind of people Alvarado was "like," what kind of partners
such people "pick," or what kind of witnesses such partners make. Nevertheless, we conclude that
the State's comment is not a basis for reversal because it did not affect Alvarado's substantial rights. 
Berry, 233 S.W.3d at 859.

 We consider three factors in making this assessment: (1) the severity of the
misconduct (i.e., the magnitude of the remarks' prejudicial effect); (2) the measures adopted to cure
the misconduct (i.e., the efficacy of any cautionary instruction by the judge); and (3) the certainty
of conviction absent the misconduct (i.e., the strength of the evidence supporting the conviction). 
Id. at 858-59. Here, the judge did not issue a cautionary instruction, and the evidence supporting
Alvarado's conviction was not especially strong. Nevertheless, we conclude that the State's
misconduct was not severe enough to affect Alvarado's substantial rights. 

 First, even though the prosecutor referred to "people like" Alvarado, she did not
specify what kind of people Alvarado was "like." Thus, to the extent that the prosecutor's comment
suggested something negative about Alvarado, it did not suggest something germane to the charges
against him (unlike, say, a reference to "child abusers like Alvarado" or something similar). Second,
we do not see how Alvarado could have been prejudiced by the suggestion that he was apt to select
a partner who would make a poor witness. Such a suggestion does not imply that Alvarado was
guilty of abusing Sandra or committing any other bad act (or even having poor character generally). 
Third, the prosecutor's comment included a frank admission that the State's key witness was a poor
one. That admission could only have helped Alvarado.

 On the whole, then, we conclude that Alvarado's substantial rights were not affected
by the State's comment that "people like Roberto Alvarado don't usually pick [partners] who would
make great witnesses." Id. at 859. We also note that, as discussed above, Alvarado's complaint
about the State's comment stems from his belief that the comment invited the jury to convict despite
a lack of evidence. To the extent Alvarado is correct, the jury charge rectified this problem by
instructing the jury to convict only on evidence beyond a reasonable doubt. Alvarado does not
contend that the jury ignored this instruction. See Hutch v. State, 922 S.W.2d 166, 170 (Tex. Crim.
App. 1996) (absent contrary evidence, appellate courts presume jury followed law provided by
charge). 

 Finding that Alvarado's substantial rights were not affected by the State's "people like
Alvarado" comment, we overrule Alvarado's second issue as it pertains to that comment.


CONCLUSION

 For the reasons stated above, we affirm the trial court's judgment.


 __________________________________________

 David Puryear, Justice

Before Justices Patterson, Puryear and Pemberton

Affirmed

Filed: July 1, 2010

Do Not Publish

1. Alvarado was Sandra's father. Felicia testified that she and Sandra lived with Alvarado
from January of 2007 until the incident in question. 
2. Both sides had copies of medical records that indicated Felicia had been diagnosed with
psychosis and paranoid ideation. Defense counsel agreed not to offer the records into evidence,
however, because, as defense counsel admitted, Felicia's mental-health history was "collateral to a
great extent."
3. For example, Alvarado told the police that his name was Ray Cabrera when they came to
his house to arrest him. Similarly, Alvarado initially told a CPS case worker that his name was
Roberto Alvarado, but he changed his story and told the case worker that his name was Ray Cabrera
after she asked him about Sandra.
4. We recognize that this testimony was not necessarily corroborative, but we must view it
as corroborative because the jury voted to convict. See Simmons v. State, 282 S.W.3d 504, 508 (Tex.
Crim. App. 2009) ("[W]hen there are two permissible views of the evidence (one tending to connect
the defendant to the offense and the other not tending to connect the defendant to the offense),
appellate courts should defer to that view of the evidence chosen by the fact-finder.").
5. Alvarado actually lodged his objection after the prosecutor began a follow-up comment: 
"People who stay with batterers--". Thus, it is not clear from the record whether Alvarado meant
to object to the comment about what people "like" him "usually" do or to the comment
characterizing him as a "batterer." Alvarado's appellate brief focuses on the former comment,
however, so we will assume that his objection was directed at it (and was timely). In any event, the
State does not contest the matter.