# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00230-CR

**Tyson Tarver, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BASTROP COUNTY, 21ST JUDICIAL DISTRICT
### NO. 13567, HONORABLE CHRISTOPHER DARROW DUGGAN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Tyson Tarver of the offense of aggravated robbery. *See* Tex. Penal Code Ann. § 29.03 (West 2003). Punishment was assessed at 32 years' imprisonment. In a single issue on appeal, Tarver asserts that the evidence is legally insufficient to sustain his conviction. We will affirm the judgment.

## BACKGROUND

The jury heard evidence that at approximately midnight on November 25, 2008, Nathaniel Pellerin and Edwin Williams robbed a convenience store in Bastrop. A clerk who was working there at the time of the offense testified that Williams had exhibited a firearm during the robbery. A security camera recorded the incident, and the recording was played for the jury. Officers investigating the robbery obtained evidence that led them to believe that Tarver had been the

driver of the getaway vehicle that was used during the commission of the offense. On December 3, Tarver, Williams, and Pellerin were apprehended by authorities.

At Tarver's trial, Pellerin testified for the State and implicated Tarver in the crime. Pellerin explained that on the night of the robbery, he and Williams had decided to "rob something or somebody." Pellerin and Williams then went to Tarver's house and persuaded Tarver to join them. The three men then departed Tarver's house in a gray vehicle belonging to Williams's girlfriend; according to Pellerin, Tarver was driving the vehicle. Pellerin testified that during the drive, they decided that their target would be a convenience store located in downtown Bastrop. Once they arrived at the store, Pellerin and Williams went inside while Tarver remained in the vehicle. Pellerin referred to Tarver as "the get-away driver."

After committing the robbery, Pellerin and Williams ran out of the store and got back in the vehicle. Tarver then "drove off," speeding away from the scene. Pellerin testified that during the getaway, he became sick and threw up on himself. After that, according to Pellerin, Tarver told him to throw away his clothing, and Pellerin took off his clothes and "threw them on the side of the road . . . in some high grass" at the intersection of Highways 290 and 21.

After successfully evading a patrol vehicle that had been in pursuit of them, Tarver, Williams, and Pellerin drove to the Austin home of Williams's girlfriend, Marie Vocal. Once they arrived, they went inside, sat down in the living room, and, according to Pellerin, "celebrated." The mood in the room, Pellerin recalled, was "[e]xcitement. Like happiness." Pellerin testified that Tarver referred to the three of them as "The A-Team." Shortly thereafter, Pellerin further testified,

2

they decided to go to a Wal-Mart store, where they made several purchases with the money they had stolen. They then returned to Vocal's house and divided up the remaining money.

The next morning, Tarver, Williams, and Pellerin returned to Bastrop and went their separate ways. The following Sunday, Pellerin recalled, he encountered Tarver at an unspecified location somewhere in Bastrop "between Pecan and Hill Street." At that time, according to Pellerin, Tarver gave him the gun that was used in the robbery and told him to "throw it in the river." Pellerin testified that he took the gun from Tarver, but instead of throwing it in the river, he discarded it "in some woods by the [railroad] tracks." After Pellerin was subsequently arrested, he directed officers to the location where he had disposed of the gun.

Other evidence considered by the jury included Tarver's video-recorded statement to authorities following his arrest; a DVD recording showing Tarver with Pellerin and Williams at the Wal-Mart store the night of the robbery; and the testimony of Williams's girlfriend, Marie Vocal, who testified that she had seen Tarver with Pellerin and Williams at her house following the robbery. We review this other evidence in more detail below.

The jury was instructed on the law of parties and found Tarver guilty as charged.[1] At punishment, Tarver pleaded true to two enhancement paragraphs alleging prior felony convictions

---

[1] A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both. Tex. Penal Code Ann. § 7.01(a) (West 2003). A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. *Id*. § 7.02(a)(2) (West 2003).

for the offenses of aggravated assault with a deadly weapon and delivery of a controlled substance. The jury assessed punishment at 32 years' imprisonment. This appeal followed.

## STANDARD OF REVIEW

In evaluating the legal sufficiency of the evidence, we must view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Williams v. State*, 301 S.W.3d 675, 683-84 (Tex. Crim. App. 2009). This standard "gives full play to the jury's responsibility to fairly resolve conflicts in the evidence, to weigh the evidence, and to draw reasonable inferences from the evidence." *Williams*, 301 S.W.3d at 684 (citing *Threadgill v. State*, 146 S.W.3d 654, 663 (Tex. Crim. App. 2004)). It is not necessary that every fact point directly and independently to the defendant's guilt, but it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

## ANALYSIS

Tarver argues that there is legally insufficient evidence to sustain his conviction because, in his view, "there was no corroboration of appellant's involvement in the alleged crime as testified to by Pellerin." "In other words," Tarver asserts, "there was no corroboration under the accomplice witness rule." We disagree.

The accomplice witness rule provides that a defendant cannot be convicted of an offense upon the testimony of an accomplice without other corroborating evidence "tending to

4

connect" the defendant to the offense. Tex. Code Crim. Proc. Ann. art. 38.14 (West 2005). "When evaluating the sufficiency of corroboration evidence under the accomplice-witness rule, we 'eliminate the accomplice testimony from consideration and then examine the remaining portions of the record to see if there is any evidence that tends to connect the accused with the commission of the crime.'" *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008) (quoting *Solomon v. State*, 49 S.W.3d 356, 361 (Tex. Crim. App. 2001)). "To meet the requirements of the rule, the corroborating evidence need not prove the defendant's guilt beyond a reasonable doubt by itself." *Id*. (citing *Trevino v. State*, 991 S.W.2d 849, 851 (Tex. Crim. App. 1999); *Gill v. State*, 873 S.W.2d 45, 48 (Tex. Crim. App. 1994)). "Rather, the evidence must simply link the accused in some way to the commission of the crime and show that rational jurors could conclude that this evidence sufficiently tended to connect [the accused] to the offense." *Id*. (citing *Hernandez v. State*, 939 S.W.2d 173, 179 (Tex. Crim. App. 1997)). "There is no set amount of non-accomplice corroboration evidence that is required for sufficiency purposes; '[e]ach case must be judged on its own facts.'" *Id*. (quoting *Gill*, 873 S.W.2d at 48).

In this case, there is other evidence in the record, apart from Pellerin's accomplice testimony, tending to connect Tarver to the offense. First, after Tarver was arrested, he provided a statement to authorities at the Bastrop Police Department that was recorded by video camera and played for the jury. The statement was taken by Detective Sara Moore of the Bastrop Police Department, the lead investigator in the case, who can be seen and heard in the recording interviewing Tarver. Moore testified at trial and explained that during the statement, Tarver provided certain details concerning the circumstances surrounding the commission of the offense,

5

including information regarding the gun that had been used during the robbery, the exact location of where they had discarded Pellerin's clothes after Pellerin had vomited, and a physical description of Pellerin and Williams on the night of the offense that was consistent with how the robbers had appeared in a security-camera recording of the robbery. From this evidence a rational jury could reasonably infer that, because Tarver had knowledge of the circumstances surrounding the offense, he was connected to it.

Second, Tarver was videotaped entering a Wal-Mart store in Austin with Williams and Pellerin. The recording shows the men entering the store at 2:25 a.m. on the night of the offense. From this evidence a rational jury could reasonably infer that Tarver had also been with Williams and Pellerin when the robbery had occurred less than three hours earlier.

Finally, Williams's girlfriend, Marie Vocal, testified that she saw Tarver at her house with Williams and Pellerin after the robbery had occurred, at approximately 1:00 a.m. According to Vocal, she heard the men talking, came downstairs, and saw them counting "a lot" of money and stacking it in piles on the floor. Vocal also observed a "pouch thing" near the money that had on it the name of the convenience store that had been robbed. After the men had finished counting the money, Vocal recalled, Williams and Vocal took pictures of the money, copies of which were admitted into evidence. Next, according to Vocal, Williams "split up" the money among the three men, and they then left the house to go to Wal-Mart. From this evidence a rational jury could reasonably infer that the money had been obtained during the robbery and that Williams had given Tarver a share of the money because of Tarver's role in the crime.

6

Viewing the above evidence in the light most favorable to the verdict, we conclude that there is legally sufficient evidence tending to connect Tarver to the offense. *See Simmons v. State*, 282 S.W.3d 504, 511 (Tex. Crim. App. 2009) (holding that non-accomplice evidence should be "viewed together, rather than as isolated, unrelated incidents" when assessing its sufficiency). Thus, Pellerin's testimony is sufficiently corroborated and we can consider it in our overall sufficiency analysis. *See McDuff v. State*, 939 S.W.2d 607, 614 (Tex. Crim. App. 1997); *Figueroa v. State*, 250 S.W.3d 490, 501 (Tex. App.—Austin 2008, pet. ref'd). We have already summarized Pellerin's testimony implicating Tarver in the crime. We hold that the combined and cumulative force of Pellerin's testimony and the other evidence considered by the jury, when viewed in the light most favorable to the verdict, would enable a rational trier of fact to find beyond a reasonable doubt that Tarver was a party to the offense.

We overrule Tarver's sole issue on appeal.

## CONCLUSION

We affirm the judgment of the district court.

_____

Bob Pemberton, Justice

Before Chief Justice Jones, Justices Puryear and Pemberton

Affirmed

Filed: October 13, 2010

Do Not Publish