02-11-504-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00504-CR

 

 


 
 
 Donald
 Wayne Walker
  
  
  
  
 v.
  
  
  
  
 The
 State of Texas
 
 
 §
  
 §
  
 §
  
 §
  
 §
  
 §
 
 
 From the 97th District Court
  
 of
 Montague
 County
  
 (2010-0000091M-CR)
  
 February
 21, 2013
  
 Opinion
 by Justice Dauphinot
  
 (nfp)
 
 


 

JUDGMENT

 

This
court has considered the record on appeal in this case and holds that there was
no error in the trial court’s judgment.  It is ordered that the judgment of the
trial court is affirmed.

 

SECOND DISTRICT COURT OF APPEALS 

 

 

 

By_________________________________

   
Justice Lee Ann Dauphinot

 

 

 

 


 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00504-CR

 

 


 
 
 Donald Wayne Walker
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

FROM THE 97th
District Court OF Montague COUNTY

----------

MEMORANDUM
OPINION[1]

----------

A
jury convicted Appellant Donald Wayne Walker of possessing pseudoephedrine with
intent to manufacture methamphetamine and assessed his punishment at twenty
years’ confinement and a $5,000 fine.  The trial court sentenced him
accordingly, and he now appeals, challenging the sufficiency of the nonaccomplice
evidence.  Because we hold that the evidence is sufficient to support Appellant’s
conviction, we affirm the trial court’s judgment.

On
August 18, 2009, at around 12:35 p.m., City of Bowie Police Officer Chris Hughes
arrived at 534 Hutchinson Street in Bowie to stake out the trailer house there in
an attempt to locate Appellant, who had an outstanding warrant for his arrest. 
Hughes had received information that Appellant could be found at that address. 
Hughes saw a pickup truck at the residence; he believed that this truck
belonged to Appellant’s brother.  After about ten or fifteen minutes, Hughes
saw some people get into the truck.  He also saw a man remove a white bag from
the truck’s bed and take the bag into the residence.

When
the truck left the house, it went past Hughes, who recognized the driver as
Appellant.  Hughes called a patrol officer, who then conducted a traffic stop
of the truck in order to execute the arrest warrant.  In addition to Appellant,
the truck had three passengers.  One of them, Lisa Barnes, was also arrested on
an outstanding warrant, and neither of the other two passengers had a driver’s
license, so the patrol officer decided to impound the vehicle.

Hughes
was present at the inventory of the vehicle, during which the officers found a
receipt for Sudafed tablets and an empty blister pack of Sudafed tablets. 
After the inventory, Hughes decided to return to the residence to conduct a
“knock and talk.”

Jason
Zapata answered the door to Hughes’s knock.  While talking to Zapata, Hughes
noticed a chemical smell coming from inside the residence; he associated this
smell with the manufacture of methamphetamine.  Hughes decided to secure the
residence and had Zapata and Cory Bong, Zapata’s girlfriend and the only other
person in the residence at the time, go outside.  While inside the house,
Hughes saw some Sudafed boxes and blister packs on the living room floor and
lithium batteries in the bedroom.

A
search warrant was obtained, and inside the house, officers found three cans of
Prestone starter fluid, which contained ether; lithium
batteries, one of which had the casing cut open and parts removed; 1280 Sudafed
pills; plastic baggies; a digital scale; a piece of broken glass pipe with
brown residue; two boxes of Equate Suphedrine and four punched blister packs; a
gallon of Coleman camp fuel in a white Walmart bag (which Zapata told Hughes he
had removed from the bed of the pickup); syringes that had been melted
together; and an unknown liquid with a chemical smell contained in a coffee cup
in a kitchen cabinet.  That liquid was later determined to be methamphetamine.

Hughes
also found at the residence an envelope addressed to Appellant at an address on
Small Street and some photos of Appellant.  Although Appellant and his former
girlfriend had signed the lease for the residence, nothing else connecting him
to the address was found inside the residence.

At
trial, Bong testified for the State.  She testified that on August 17, 2009,
Zapata had offered to pay her for buying pseudoephedrine pills—$100 for each
box—and that she had agreed.  That evening, she and Zapata met up with
Appellant and Barnes to go to Fort Worth and buy pseudoephedrine.  On the
morning of August 18, she, Zapata, Appellant, and Barnes went to several
stores.  At a Walgreen’s, she and Zapata each bought a box of pseudoephedrine. 
At another Walgreen’s, Zapata bought another box.  They then went to Walmart,
where she and Zapata each bought two boxes.  After making these purchases, the
four returned to the residence, where Appellant said he lived.  After an hour
or two, Barnes and Appellant left to visit Barnes’s children.

Bong
further testified that her understanding was that Appellant would cook the
methamphetamine and that she would be paid by Appellant or Zapata.  She stated
that she, Zapata, and Barnes purchased the pills and removed them from their
packaging.

Appellant
concedes that there was sufficient evidence that there were at least 300
Sudafed pills and at least three substances listed under health and safety code
section 481.124(b)(3)(B) at the residence in question.[2]
 Appellant argues, however, that the State’s entire case is built primarily
around accomplice Bong’s testimony.  Appellant argues that it is Bong’s
testimony that established his possession and control of both the
pseudoephedrine and the “subject premises and activities therein” and that the
evidence is therefore insufficient to support his conviction.

The accomplice-witness rule is a statutorily imposed
sufficiency review and is not derived from federal or state constitutional
principles that define sufficiency standards.[3] 
The accomplice-witness rule, which is set out in Article 38.14 of the code of
criminal procedure, provides that

[a] conviction cannot
be had upon the testimony of an accomplice unless corroborated by other
evidence tending to connect the defendant with the offense committed; and the
corroboration is not sufficient if it merely shows the commission of the
offense.[4]

When evaluating the sufficiency of corroboration evidence
under the accomplice-witness rule, we “eliminate the accomplice testimony from
consideration and then examine the remaining portions of the record to see if
there is any evidence that tends to connect the accused with the commission of
the crime.”[5] 
To meet the requirements of the rule, the corroborating evidence need not prove
the defendant’s guilt beyond a reasonable doubt by itself.[6]  Nor is it necessary for the
corroborating evidence to directly link the accused to the commission of the
offense.[7] 
Rather, the evidence must simply link the accused in some way to the commission
of the crime and show that “rational jurors could conclude that this evidence
sufficiently tended to connect [the accused] to the offense.”[8]

There is no set amount of nonaccomplice corroboration
evidence that is required for sufficiency purposes; “[e]ach case must be judged
on its own facts.”[9] 
Circumstances that are apparently insignificant may constitute sufficient
evidence of corroboration.[10]

Here,
the evidence shows that Appellant was driving a pickup truck when he was
arrested, and inside that pickup was a receipt for the purchase of tablets
containing pseudoephedrine.  Imprinted on the receipt was the location Haltom
City, Texas, and the date of Appellant’s arrest.  Also present in the pickup were
empty blister packs for the Sudafed.  Additionally, Appellant was arrested soon
after he left the house containing numerous items used in the manufacture of
methamphetamine as well as methamphetamine in liquid form.  There was evidence
that Appellant had leased the house, and some items of his property were found
inside the house.  While it is true that the evidence shows joint possession of
the trailer house, the evidence nonetheless is sufficient to corroborate Bong’s
testimony.[11]  And, as Appellant
concedes, Bong’s testimony provided direct evidence of his knowing possession
of the pseudoephedrine and of his intent to use it to manufacture
methamphetamine.

Applying
the appropriate standard of review, we hold that the evidence is sufficient to
corroborate the accomplice testimony and, accordingly, sufficient to sustain
the jury’s verdict.  We overrule Appellant’s sole point and affirm the trial
court’s judgment.

 

 

LEE ANN DAUPHINOT JUSTICE

 

PANEL: 
DAUPHINOT,
WALKER, and GABRIEL, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  February 21,
2013









[1]See Tex. R. App. P. 47.4.





[2]See Tex. Health &
Safety Code Ann. § 481.124(b)(3)(B) (West 2010) (providing in relevant part
that intent to manufacture methamphetamine is presumed by the possession in one
building of at least three hundred pseudoephedrine tablets and “at least three
of the following categories of substances commonly used in the manufacture of
methamphetamine:  (i) lithium . . . ; . . . (iii) an organic solvent,
including ethyl ether . . . ; [and] (iv) a petroleum distillate,
including . . . charcoal lighter fluid”) (emphasis added).





[3]Cathey v. State,
992 S.W.2d 460, 462–63 (Tex. Crim. App. 1999), cert. denied, 528 U.S.
1082 (2000).





[4]Tex. Code Crim. Proc. Ann.
art. 38.14 (West 2005).





[5]Malone v. State,
253 S.W.3d 253, 257 (Tex. Crim. App. 2008) (quoting Solomon v. State, 49
S.W.3d 356, 361 (Tex. Crim. App. 2001)).





[6]Id.; Trevino v.
State, 991 S.W.2d 849, 851 (Tex. Crim. App. 1999); Gill v. State,
873 S.W.2d 45, 48 (Tex. Crim. App. 1994).





[7]Cathey, 992 S.W.2d at
462.





[8]Simmons v. State,
282 S.W.3d 504, 508 (Tex. Crim. App. 2009); see McDuff v. State,
939 S.W.2d 607 (Tex. Crim. App.), cert. denied, 522 U.S. 844
(1997).





[9]Malone, 253 S.W.3d
at 257 (quoting Gill, 873 S.W.2d at 48).





[10]See Trevino, 991
S.W.2d at 852.





[11]See Poindexter v. State, 153 S.W.3d 402, 412
(Tex. Crim. App. 2005).