

# NUMBER 13-19-00183-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

ANISETO ALEJANDRO JR.,                                                                          Appellant,

v.

THE STATE OF TEXAS,                                                                          Appellee.

On appeal from the 156th District Court
of Live Oak County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Perkes
Memorandum Opinion by Justice Longoria**

Appellant Aniseto Alejandro Jr. was convicted of capital murder, a capital felony.
*See* TEX. PENAL CODE ANN. § 19.03(a)(7)(A). Alejandro was sentenced to life
imprisonment without parole. By three issues, Alejandro argues that: (1) the evidence is
legally insufficient to support his conviction; (2) the accomplice testimony was

insufficiently corroborated; and (3) the trial court reversibly erred by admitting hearsay text messages into evidence. We affirm.

## I. BACKGROUND

On April 11, 2017, Alejandro was indicted by a Live Oak County grand jury for capital murder. The indictment alleged that on December 22, 2015, Alejandro shot and killed Bill Hammit and Sandra Garcia during the same criminal transaction and then subsequently burned their corpses. A jury trial began on March 28, 2019.

The evidence at trial established that Hammit and Garcia operated a store named Camco Saltwater Transport (Camco) in Clegg, Texas. Several members of the community testified that they saw the decedents' vehicles, including a large white truck, at Camco on the night of December 22, 2015. Several community members also recalled seeing another vehicle, with its lights on, at Camco late that same night.

Jammie Kirby, Hammit's son-in-law, worked as a truck driver for Camco. Kirby testified that on December 22, 2015, he and his wife borrowed a credit card from Hammit to make purchases to improve their home. According to Kirby, they returned the credit card to Hammit by 2:30 in the afternoon of the same day. Kirby returned to Camco at 8:00 a.m. the following morning to find that the store was unlocked, but Hammit and Garcia were not at the store. Garcia's pickup truck was also missing, which Kirby thought was unusual. Kirby asked Cory Priddy, Garcia's son-in-law, to help locate Hammit and Garcia. Priddy eventually returned to Camco to inform Kirby that he had found Garcia's burnt truck and that Hammit and Garcia were both dead. When they returned to the store, they noticed a shell casing from a gun.

Deputy Danny Caddell of the Live Oak County Sheriff's Office testified that his first lead in this case came when he realized that Hammit's and Garcia's credit cards were being used in the San Antonio area. Camera footage revealed that Alejandro made purchases with Hammit's and Garcia's credit cards at various locations, including a convenience store, Wal-Mart, Dairy Queen, HEB, Pizza Hut, McDonald's, CD Tire Service, Target, and Sephora.

Caddell testified that he obtained an arrest warrant for Alejandro and arrested him on March 25, 2016. Following the arrest, Caddell searched Alejandro's residence in D'Hanis pursuant to a search warrant. The following items, among other things, were located and seized: a pair of Nike shoes; new pair of boots; a list containing categories of "things to pay first," "Christmas," and "trips" that totaled over $100,000; two knives that had been missing from Camco; and a blue shirt with what appeared to be bleach stains. Caddell testified that shoe imprints recovered from Camco were consistent with the Nike shoes.

In a video-taped statement, Alejandro told Caddell that Hammit had simply given him the credit cards; however, Caddell noted that Alejandro's version of events conflicted with what Kirby had told Caddell concerning the credit cards. Alejandro further told Caddell that another individual, Steven Deleon, could verify that Alejandro was in Poteet during the murders. However, Deleon, a former employee of J.C. McLelland, testified that he only became acquainted with Alejandro in January 2016. He claimed that he was never in the company of Alejandro at any point in December of 2015. Caddell reaffirmed this testimony after examining Alejandro's cell phone records.

3

Glenn Bard, a cell phone analysis expert, testified that the cell phone belonging to Desiree Trevino[1] was located within the vicinity of Camco at 8:00 p.m. on December 22, 2015. According to Bard, the cell phone remained near Camco until shortly before midnight. The cell phone was next located at a Holiday Inn Express in San Antonio at approximately 8:30 a.m. the following day. The general manager of the Holiday Inn Express in San Antonio confirmed that, according to their records, Alejandro registered as a guest at that location at approximately 3:00 a.m. on December 23, 2015.

Caleb Bunch, a patrol officer with the Atascosa County Sheriff's Office testified that he stopped Alejandro for speeding on December 23, 2015, at 1:38 a.m. in Poteet. Bunch gave Alejandro a verbal warning before letting him go.

Ray Fernandez, the Nueces County Medical Examiner, testified that he examined the bodies recovered from the burnt pickup truck. The bodies were burned severely enough that identification was impossible using fingerprints or visual recognition. Instead, the respective identities of the burnt bodies were determined through comparing the DNA extraction from the bodies with DNA extractions from Hammit's and Garcia's children. Fernandez testified that an analysis of Hammit's organs revealed a low level of carbon monoxide, indicating that Hammit was already dead by the time his body was consumed by fire. Fernandez offered the same opinion in regard to Garcia.

The State also called Trevino as an accomplice witness. While Alejandro was married to Adelina Flores, Trevino was in an intimate relationship with Alejandro. Trevino and Alejandro had their first child together in January 2013; their second child was born

---

[1] Trevino was arrested and charged with the same offense as Alejandro. However, she testified that she entered into an agreement with the State in which she would testify in the trial against Alejandro and plead true to credit card abuse, tampering with evidence, and burglary of a habitation in exchange for the State seeking a lesser punishment against her.

in August 2015. Trevino and Alejandro began living together in D'Hanis in December 2015. Trevino testified that she was first contacted by law enforcement in March 2016 concerning the Camco incident. She had given an alibi for Alejandro, claiming that he had a job in Austin, Texas. However, Trevino admitted at trial that she was not truthful during this initial contact. It was simply a fabricated story.

According to Trevino, on December 22, 2015, she and Alejandro left their children with Trevino's mother in San Antonio so that she could accompany him to a "job." Upon arriving at Camco, Alejandro parked his car across the street, exited the vehicle, and told her that he would be back. After being gone for approximately one hour, Alejandro returned to his car and told Trevino that there were people at Camco and that he was going to wait until they left so that he could "retrieve money that was owed." After waiting ten minutes, Alejandro left the car and was gone for about another hour. Trevino claimed that when Alejandro returned, he placed two trash bags in the back seat then immediately left for about another hour. When Alejandro returned the third time, he was driving a white pickup truck. He told Trevino to remain where she was as he removed items from the truck and placed them in his vehicle. Alejandro drove away in the truck for approximately thirty minutes. Trevino testified that around that time she heard a loud pop and saw an orange glow behind some trees as she saw Alejandro walking back towards his car. Trevino asked Alejandro what was going on, to which he responded: "Nothing. Don't worry about it."

As Trevino and Alejandro began driving back to San Antonio, Alejandro showed her a phone and told her that he got it from "that place." However, he threw the phone out the window once he realized that he could not use the phone because it was protected

5

with a passcode. Trevino testified that they were pulled over in Poteet, given a verbal warning, and then checked into the Holiday Inn hotel using cash taken from Camco. The following morning, she and Trevino went to Ingram Park Mall to make various purchases.

McLelland testified that he was a contractor working on a number of projects erecting fences and building roads for landowners in December of 2015. He testified that he became acquainted with Hammit in early 2015 by visiting his store. McLelland testified that, within months, he was spending a decent amount of time together with Hammit, either for business purposes or just hanging out. McLelland testified that he also became acquainted with Alejandro in early 2015. Alejandro began working for McLelland as a welder. While working for McLelland, Alejandro cashed his checks at Camco on multiple occasions. However, in July 2015, Alejandro was arrested for seeking to sell materials stolen from a job site at which McLelland was performing contract work. According to McLelland, he visited Camco at the end of the workday on December 22, 2015, and stayed until approximately 10:00 p.m. After receiving a call from Priddy, he returned the following morning only to discover that Hammit and Garcia were missing. Priddy showed him a shell casing that had been discovered at Camco. McLelland claims that he became suspicious because it seemed as if it was fired from his gun. McLelland checked his vehicle and discovered that his Glock .357 Sig was missing. McLelland called 911. When police arrived, McLelland informed them that his gun was missing.

Lonald Frazier testified that he was a former employee of McLelland. According to Frazier, in the spring of 2015, Alejandro attempted to sell him fencing material that was stolen from McLelland. Frazier reported this to McLelland. In August 2015, Frazier sold a

6

.357 Glock to McLelland because McLelland's old gun, a Ruger .9mm pistol, had been stolen.

Vicente Cisneros testified that Alejandro is his cousin's ex-boyfriend. Cisneros testified that he purchased a Ruger pistol from Alejandro. Alejandro told Cisneros that the gun had belonged to his boss, but he represented to Cisneros that he had the paperwork for the gun to show that he was the legal owner. Alejandro never presented Cisneros with the paperwork. In January 2016, Alejandro contacted Cisneros to inform him that he was interested in selling a Glock.

The jury found Alejandro guilty of capital murder of Hammit and Garcia. Alejandro was sentenced to life without parole in the Institutional Division of the Texas Department of Criminal Justice. This appeal followed.

## II. LEGAL SUFFICIENCY

In his first issue, Alejandro argues that the evidence is legally insufficient to sustain his conviction.

### A. Standard of Review & Applicable Law

In order to determine if the evidence is legally sufficient in a criminal case, an appellate court reviews all of the evidence in the light most favorable to the verdict and determines whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Ingerson v. State*, 559 S.W.3d 501, 509 (Tex. Crim. App. 2018); *Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim. App. 2018) ("Due process requires that the State prove, beyond a reasonable doubt, every element of the crime charged."); *Brooks v. State*, 323 S.W.3d 893, 905 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia,* 443 U.S. 307, 319 (1979)). This standard tasks the

7

factfinder with resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from basic facts. *See Ingerson*, 559 S.W.3d at 509. On appeal, reviewing courts "determine whether the necessary inferences are reasonable based upon on the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Appellate courts must avoid "divide and conquer" strategies in reviewing the sufficiency of the evidence; instead, appellate courts must consider the evidence cumulatively. *See Nisbett*, 552 S.W.3d at 262.

We give great deference to the trier of fact and assume the factfinder resolved all conflicts in the evidence in favor of the verdict. *See Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015); *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). "An appellate court cannot act as a thirteenth juror and make its own assessment of the evidence. A court's role on appeal is restricted to guarding against the rare occurrence when the factfinder does not act rationally." *Nisbett*, 552 S.W.3d at 262. "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper v. State,* 214 S.W.3d 9, 13 (Tex. Crim. App. 2007); *see Nisbett*, 552 S.W.3d at 262; *Orr v. State*, 306 S.W.3d 380, 395 (Tex. App.—Fort Worth 2010, no pet.). We will uphold the verdict unless the factfinder "must have had reasonable doubt as to any essential element." *Laster*, 275 S.W.3d at 517.

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge in this case would state that a person commits the

offense of capital murder if he murders more than one person during the same criminal transaction. TEX. PENAL CODE ANN. § 19.03(a)(7)(A). A person commits murder if he intentionally or knowingly causes the death of an individual. *Id.* § 19.02(b)(1).

## B. Analysis

Alejandro argues that "the evidence at trial provides only a suspicion of guilt at best for capital murder." According to Alejandro, no "forensic, DNA, or other trace evidence, if any, implicated [him] in this offense at all." And Alejandro claims that a viable alternate suspect—McLelland—was not properly investigated.

We first note that the State had no obligation to show whether McLelland was properly investigated as a viable alternate suspect. The State simply needed to establish the essential elements of capital murder beyond a reasonable doubt as to Alejandro. *See Clayton*, 235 S.W.3d at 778. We also note that circumstantial evidence alone is sufficient to establish guilt. *See Hooper,* 214 S.W.3d at 13. Priddy testified that he saw Alejandro in the vicinity of the offense on the evening of December 22, 2015. Shoe prints at Camco were consistent with the Nike shoes found in Alejandro's residence. Trevino testified extensively concerning the night of December 22, 2015, and how Alejandro went to Camco that night to "retrieve money that was owed." After several hours, Alejandro came back driving a large white truck that matched the description of the vehicle owned by Garcia, and then disappeared again. Trevino next testified that she heard a loud "pop" and saw an orange glow through the trees as Alejandro returned to the car without the white truck. Trevino further confirmed that Alejandro made a number of purchases over the next day and months using money and credit cards belonging to the victims. The evidence further indicated that Alejandro attempted to sell a Glock, the type of gun

9

connected to the murders and similar to the gun that McLelland reported as missing. Lastly, Alejandro attempted to provide Deleon as an alibi witness; however, Deleon testified that he was never with Alejandro in December 2015. *See King v. State*, 29 S.W.3d 556, 565 (Tex. Crim. App. 2000) (holding that making false statements to cover up crime is evidence indicating consciousness of guilt and is admissible to prove commission of the offense); *Torres v. State*, 794 S.W.2d 596, 598 (Tex. App.—Austin 1990, no pet.) ("A 'consciousness of guilt' is perhaps one of the strongest kinds of evidence of guilt.").

Based on all of the evidence presented, we conclude that a rational trier of fact could have found the essential elements of capital murder beyond a reasonable doubt. *See Ingerson*, 559 S.W.3d at. 509. Viewing the evidence in the light most favorable to the verdict, we conclude there was legally sufficient evidence to support Alejandro's conviction. *See Brooks*, 323 S.W.3d at 905. We overrule Alejandro's first issue.

### III. CORROBORATING EVIDENCE

In his second issue, Alejandro argues that there was insufficient evidence to corroborate Trevino's testimony.

### A. Standard of Review & Applicable Law

In Texas, a conviction cannot be secured by the testimony of an accomplice unless that testimony is corroborated by other evidence "tending to connect the defendant with the offense committed." TEX. CODE CRIM. PROC. ANN. art. 38.14; *see Cocke v. State*, 201 S.W.3d 744, 747 (Tex. Crim. App. 2006). Thus, when reviewing the sufficiency of the evidence to corroborate accomplice testimony, "the reviewing court eliminates the accomplice testimony and examines the remaining portions of the record to determine if

there is any evidence that tends to connect the accused with the commission of the crime." *Castillo v. State*, 221 S.W.3d 689, 691 (Tex. Crim. App. 2007). The corroborating evidence does not need to be independently sufficient to establish guilt; "there simply needs to be 'other' evidence 'tending to connect' the defendant to the offense." *Id.*; *see Casanova v. State*, 383 S.W.3d 530, 538 (Tex. Crim. App. 2012).

**B. Analysis**

Alejandro argues that "[t]he mere presence of the accused in the company of the accomplice shortly before or after the time of the offense is not, in itself, sufficient corroboration of the testimony of an accomplice." *Etheredge v. State*, 542 S.W.2d 148, 150 (Tex. Crim. App. 1976). However, the Texas Court of Criminal Appeals has "repeatedly held that evidence that an accused was in the company of the accomplice close to the time of the offense, *coupled with other suspicious circumstances*, may tend to connect the accused to the offense." *Gill v. State*, 873 S.W.2d 45, 49 (Tex. Crim. App. 1994) (emphasis added).

In the present case, within hours of the commission of the offense, Alejandro was in the company of Trevino when their vehicle was pulled over by patrol officer Bunch. The non-accomplice evidence in the present case also established the following: (1) Alejandro was in the vicinity of Camco on the evening of December 22, 2015; (2) over the course of the next day after the commission of the offense, Alejandro used credit cards that belonged to the deceased victims; (3) sometime after the offense, Alejandro attempted to sell a weapon similar to the one linked to the murders, which was also similar to the gun that McLelland reported as missing; (4) Alejandro was found to be in possession of items taken from the scene of the offense; and (5) Deleon could not verify Alejandro's

11

whereabouts on December 22, 2015. The non-accomplice evidence, when viewed as a whole, tended to connect Alejandro to the offense committed. *See Castillo*, 221 S.W.3d at 691. Therefore, we conclude that the non-accomplice evidence adduced at trial was sufficient to satisfy the accomplice witness rule. *See* TEX. CODE CRIM. PROC. ANN. art. 38.14; *Gill*, 873 S.W.2d at 49. We overrule Alejandro's second issue.

## IV. HEARSAY EVIDENCE

In his third issue, Alejandro argues that the trial court erred by admitting hearsay evidence from Trevino.

### A. Standard of Review & Applicable Law

A trial court's ruling regarding the admissibility of evidence is reviewed for abuse of discretion. *Cameron v. State*, 241 S.W.3d 15, 19 (Tex. Crim. App. 2007). As long as the trial court's decision was within the zone of reasonable disagreement and was correct under any theory of law applicable to the case, it will be upheld. *Winegarner v. State*, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007). Upon finding a non-constitutional error, the reviewing court will reverse only upon a finding that the error affected the substantial rights of the accused. TEX. R. APP. P. 44.2(b); *see Barshaw v. State*, 342 S.W.3d 91, 94 (Tex. Crim. App. 2011). Substantial rights are not affected if, based on the record as a whole, this Court has a fair assurance that the erroneous admission of evidence had either no influence or only a slight influence on the verdict. *Whitaker v. State*, 286 S.W.3d 355, 364 (Tex. Crim. App. 2009); *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). In making this assessment, this Court considers everything in the record, the nature of the evidence supporting the verdict, the character of the alleged error, and how it relates to other evidence in the record. *See Motilla*, 78 S.W.3d at 355. The presence of

overwhelming evidence supporting the conviction can be a factor in the evaluation of harmless error. *See id.* at 356.

**B. Analysis**

During Trevino's testimony, the State introduced a number of conversations Trevino had with Alejandro via text messaging. Alejandro specifically complains of the following messages sent by Trevino to Alejandro as being hearsay:

> I've put up with so much from you for 5 years and [I] even stood by your side with what you did to those people and you STILL to this day treat me like im [sic] nothing.
>
> . . . .
>
> You've done things to the extent of killing people and [I] stood by you through that but you cant [sic] even change for us. I hope this night and all of your lies are worth it.

Assuming without deciding that it was error to admit these text conversations, Alejandro has not demonstrated that his substantial rights were affected. *See* TEX. R. APP. P. 44.2(b); *Barshaw*, 342 S.W.3d at 94. Considering everything in the record—including Trevino's testimony concerning Alejandro's activities on the night of December 22, 2015; the evidence concerning Alejandro's use of credit cards belonging to the deceased shortly after the murders; Alejandro's attempt to sell a gun similar to the one linked to the murders; Alejandro's possession of items stolen from Camco; and the fact that Alejandro's alibi witness could not verify his whereabouts—we have a fair assurance that the admission of the text messages had either no influence or only a slight influence on the verdict. *See Motilla*, 78 S.W.3d at 355. We overrule Alejandro's third issue.

## V. CONCLUSION

We affirm the trial court's judgment.

NORA L. LONGORIA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
19th day of November, 2020.

14